By reason of the abandonment so found, the court must enter judgment against the agency and in favor of the owner in accordance with R. C. 163.21 (B).

Defendant's motion to strike the amended complaint for appropriation is overruled and this cause is continued for further proceedings in accordance with law and the applicable Civil Rules of Procedure.

It is so ordered.

*Motion to strike overruled.*

CITY OF SPRINGFIELD, TRUSTEE, *v.* PATTERSON ET AL.

(No. 60531—Decided May 7, 1970.)

Common Pleas Court of Clark County.

*Mr. David R. Collins*, law director, and *Mr. Richard H. Wehler*, for plaintiff the City of Springfield as Trustee.
*Mr. Salvatore J. Spalla*, for defendant Mabel L. Sanders.
*Mr. Joel R. Williams*, for estate of defendant Robert F. Frank, deceased.
*Mr. Herbert T. Eikenbary* and *Mr. Carl E. Juergens*, for defendant Elmer C. Frank.
*Mr. H. J. Guinsler*, for estate of defendant Helen Carlisle.
*Mr. Robert B. Pavlatos*, for defendant Mary Hauck.
*Mr. Eugene A. Nevius*, for defendant Leah Frank.

GOLDMAN, J.   This is an action for declaratory judgment.

The plaintiff is the city of Springfield, as trustee under the last will and testament of Anna Roth, deceased, which was admitted to probate in the Probate Court of Clark County, Ohio, on June 1, 1950.

The provision of the will which established the trust fund and which gives rise to the present action is set forth and described in the petition as Item IV of said will, and is as follows:

"Item IV.   All the remainder of my property, which I may own or to which I may be legally or equitably entitled, or over which I may have any power of appointment, I give, devise, bequeath and appoint to the city of Springfield, Ohio, in trust, however, for the following uses and purposes, and subject to the following terms and conditions:

"(a) The Trustee shall invest or reinvest the funds of said estate in bonds of the United States Government, and in bonds of the city of Springfield, Ohio.

"(b) The net income of said trust estate shall be disbursed for the purpose of providing surgical operations and hospital care in order to prevent threatened blindness, in cases of glaucoma, or in an endeavor to restore sight, in cases of cataract, for the benefit of residents of Springfield or Clark County, Ohio, who have not apparent means of their own for such purpose. If the income from said fund is not sufficient to provide for at least one operation per year, the Trustee may expend such part of the principal thereof as may be necessary in order to provide for one such operation per year.

"Surgical operations to be performed in furtherance of this object shall be performed by competent and experienced surgeons in any place which may be deemed proper by my Trustee.

"The determination of the persons to whom this assistance shall be extended and the amount thereof shall be within the discretion of the Trustee. In the selection of persons to be benefitted, the Trustee is requested to seek the advice and assistance of the Director of the Department of Ophthalmology at the Springfield City Hospital, or such person as may hold an equivalent position, and may in addition seek the advice and assistance of any regularly established organization in said County devoting substantial service to the relief of the blind, or of those threatened with blindness.

"Disbursements by said Trustee may be made directly to any beneficiary or on behalf of such beneficiary to any other person or organizations.

"Said Trustee shall annually file an accounting of receipts and disbursements with the Probate Court of the county wherein such trust is administered.

"(c) The Board of Trustees of the Springfield City Hospital or other governing body of said hospital, shall have the full and complete rights, power and authority to administer this trust, to hold the funds included therein,

to make investments, reinvestments and disbursements, and in general to have all powers as heretofore set forth, and the City of Springfield, Ohio, shall have the authority to delegate to said Board all of its powers and duties hereunder.

"In the event of such delegation, this trust shall be administered by such Board of Trustees or other governing board acting in its own name. Neither the City of Springfield nor such Board of Trustees shall be required to give bond before entering upon the performance of their duties."

The plaintiff alleges that the net income of the trust estate is such that it is not possible to expend the entire income for the purposes of said trust as plaintiff has interpreted and applied the same to the date of filing the petition. It alleges that because funds other than those provided for by the will are now available for operations in cases of glaucoma and cataracts, plaintiff is in doubt as to its duty with respect to the disposition of said trust or the income therefrom. It therefore seeks a declaration from this court as to its duties in the proper disposition of the trust funds it now holds.

A large number of persons, mainly heirs of the late Anna Roth, as well as the Attorney General of Ohio, were made parties defendant. However, the Attorney General has elected not to participate in this action.

Several heirs, though not all of them, have filed answers, asking in substance that the will and the trust be declared inoperative and null and void, and that the funds in the hands of the trustee be distributed to the heirs at law of Anna Roth.

A pre-trial conference was held, at which time the respective contentions of the parties who appeared were set forth and the issues defined. As a result of such stipulations and the evidence later offered and received, it appears that the plaintiff seeks a declaration by this court allowing it greater latitude in the expenditure of the trust funds than it has heretofore voluntarily exercised, so that the trust funds may be used not merely to defray the costs

of surgery for destitute persons where glaucoma and cataracts are involved, but also for the purpose of early treatment, as well as for surgery, of glaucoma and cataracts and other eye conditions that predispose persons to diseases of the eye that may lead to blindness. Plaintiff also prays that the beneficiaries of the trust fund be considered to include not only the destitute citizens in our city and county, but those who may be designated as "medically indigent."

On the other hand, the heirs contend that the language of the trust restricts the use of the funds only to those who are *destitute*, and only in those instances in which surgery for glaucoma and the removal of cataracts is involved. The heirs further contend that, since the need for such surgery does not apparently exhaust the income of the trust fund, the court should declare the trust terminated and order its distribution to the heirs at law of Anna Roth.

Following this pre-trial conference, a hearing was held at which testimony was offered bearing upon the issues raised by the pleadings and the stipulations arrived at pre-trial. The witnesses who testified included two eminent ophthalmologists presently practising their profession in the city of Springfield, an official connected with the administration of each of the two major hospitals in the city, and the director of finance of the city of Springfield. All these witnesses were summoned by the plaintiff, and no testimony was offered or submitted by any of the defendants. Thereafter briefs were filed and the matter submitted to the court for decision.

The testimony of the physicians was to the effect that a great deal of change in the diagnosis and treatment of both glaucoma and cataracts has taken place since 1950, the year in which the trust fund was created, and that at present, *less* emphasis is placed upon surgery and *more* upon prevention of the diseases and their treatment with drugs. It is a matter of common knowledge that in recent months and years there have been great advances in the discovery and development of more effective drugs for the

prevention, control, and treatment of glaucoma, as well as improved techniques for detecting a tendency to glaucoma before the symptoms appear, by means of screening tests and procedures designed to discover those disposed to or already indicating a tendency towards glaucoma. (Recently it was publicly estimated that glaucoma has blinded 63,000 Americans and has threatened the vision of tens of thousands more.) Their testimony also revealed new techniques and newly developed equipment employed in cataract surgery.

The testimony of the physicians further revealed that the Springfield hospitals now lack much needed facilities and equipment for the employment of the new techniques above referred to, which, if made available, would be helpful and beneficial in the treatment of diseases of the eye and surgery when required. They revealed that local patients suffering from retinal detachment, which also may result in blindness, often must be sent to Indianapolis or Columbus for treatment simply because of the lack of adequate equipment in Springfield hospitals. They indicated further that there was a need for personnel trained in these new techniques to discover those, particularly among children, who show symptoms of glaucoma or other conditions of the eye that may result in ultimate blindness if not properly and promptly treated. They also agreed that the modern and most effective approach to eye disease is to treat the condition which results in and leads to loss of vision, rather than to resort to surgery when blindness finally threatens or develops.

The testimony of the hospital administrators corroborated that of the physicians with respect to the lack and need of equipment and personnel not now available because of lack of funds. Their testimony also emphasized the rise and growth of a category of people who may be designated as "medically indigent." They described these as people who have incomes capable of absorbing most normal living expenses, who are at or slightly above the poverty level, who are not on welfare, but who have inadequate insurance coverage because they are either

ineligible or unable to procure such coverage, or whose medical expenses have already exceeded the limits of such coverage and who are thus, for any or all of these reasons, unable either to absorb the costs of the treatment of eye diseases, including surgery, or are unable to obtain assistance for this purpose from other sources. Their testimony also revealed that up to the date of the filing of the petition the trust funds involved in this action were made available only to those whom they found to be "destitute," without access to any outside assistance, and then only when surgery is recommended or required.

Finally, the finance director of the city of Springfield testified that, as of January 1, 1968, there was a sum slightly in excess of $135,000 in the trust account, which was made up of $116,113.23 in invested capital and $19,-665.83 in accrued and unspent income. He testified further that for the two years prior to January 1, 1968, only $5,-295.82 of trust funds was expended, whereas the income for the trust fund during those two years amounted to $7,216.72.

Thus the pleadings, stipulations, and evidence give rise to two questions which need be answered in arriving at a decision in this case. They may be stated as follows:

(1) Does the last will and testament of Anna Roth require that only those who are "destitute" be the beneficiaries of the trust?

(2) Must the trust funds be used solely and exclusively to defray only the costs of surgery and attendant hospitalization of those who are afflicted with either glaucoma or cataracts?

It is of course the duty of the trustee to administer the trust in accordance with directions given by the settlor in the trust instrument. Frequently, however, it becomes difficult to understand or apply the express directions to new and changing circumstances and conditions. Hence the instant lawsuit.

An examination and reading of Item IV of the will discloses that its provisions are intended for the benefit of residents of Springfield or Clark County, Ohio, who have

"no apparent means" of their own. It is the opinion of this court that the language "no apparent means" does not exclude those who are "medically indigent" and that those who are in fact in the latter category are indeed "without apparent means" as that expression is currently understood, and are thus entitled to be among the beneficiaries of the trust fund.

All citizens are aware of the crisis in medical care brought about by soaring medical and hospital costs and its effect upon persons of modest means. It is the opinion of this court that to extend the benefits of Anna Roth's generosity to those people who find themselves in this category is to carry out the clear and expressed intention and desire of the testator. Furthermore, the will *expressly delegates to the trustee* the determination of the persons to whom assistance shall be extended and the amount thereof. (See paragraph (b) of Item IV.)

With respect to the other question raised, namely, whether or not the trust funds must be used exclusively for surgery and in those instances only where glaucoma and cataracts are involved, the court concludes that a careful reading of Item IV of the will discloses a general intention on the part of Anna Roth to assist those, in the language of the will, who are "threatened with blindness," and especially those afflicted or threatened with glaucoma or cataracts, but not exclusively restricted to them or to those instances which require surgery. But even if such interpretation of the will may appear to be taking liberty with the express language employed by the testator, there are certain principles of equity long recognized and acknowledged as the law in Ohio which are peculiarly applicable to the instant case and to which the court in its judgment must resort in construing the intention of the testator and the duty and authority of the trustee in administering the trust fund.

It should be noted that the trust in this case is what is known as a "charitable trust" and that there is a general rule of construction which is applicable to such trusts. The Ohio Supreme Court, in *Gearhart v. Richardson*, 109

Ohio St. 418 (second paragraph of the syllabus), held: "Gifts for charitable purposes have always been favored in equity, and trusts created for such purposes are carried into effect upon broad liberal principles of equity jurisdiction under circumstances where a purely private trust might fail." Moreover, the same court, at page 434 of its decision, declared: "Charitable trusts are entitled to a liberal and favorable consideration and will receive a more liberal construction than is allowable to private trusts or in cases of gifts to private individuals."

In the instant case it is quite clear that in 1950, when Anna Roth established the trust fund, glaucoma and cataracts were the diseases and conditions of the eye most frequently known to cause blindness, and that at that date surgery was the treatment most commonly and frequently resorted to. Today, however, early detection, treatment by newly discovered and more effective drugs, the use of recently developed and highly technical equipment to detect and treat conditions of the eye, all discovered and developed since 1950, are the most effective ways in which blindness is now prevented and diseases of the eye treated. These recent developments in medical science were obviously unknown to the testator, as well as to most others, at the date she created the trust, nor could she at that date have foreseen their development.

Must we assume that Anna Roth, whose obvious generosity and compassion for those threatened with blindness led her to establish the trust fund, intended for all time in the foreseeable future to benefit *only those* who were so threatened by the principal causes of blindness then known to her and to medical science—glaucoma and cataracts—and then only for surgery? Or did she really intend to include all persons without apparent means in our city and county who, because of any disease and condition of the eye were threatened with blindness, not excepting those who today can be safely and more effectively treated without surgery?

It seems unreasonable and uncharitable to hold that Anna Roth intended the more narrow interpretation of her generosity, nor does the language of the will compel such

an interpretation. It can more reasonably be said that she did not and could not foresee the miracles to be wrought by medical research, and her intentions to assist those threatened with blindness must be read in the light of these changed conditions.

In *Fenn College* v. *Nance*, 4 Ohio Misc. 183, in dealing with the rule of construction in a charitable trust then before it, the court made the following observations which are pertinent and relevant to the issues in this case, and which this court notes with approval:

There is nothing more certain in life than change. As a wise man has said: "New occasions teach new duties; time makes ancient good uncouth." What is reasonable and helpful today may not remain so with the passing of the years. No man can accurately anticipate the needs of the next generation. Equity has long recognized this, and in dealing with trusts, both private and charitable, has not hesitated to exercise its inherent power over the administration of trusts in order to perpetuate the purposes of settlors in the face of changed conditions. This has been especially true as to charitable trusts. In *Gearhart* v. *Richardson* (1924), 109 Ohio St. 418, the Ohio Supreme Court said (p. 434):

"Charitable trusts are entitled to a liberal and favorable consideration and will receive a more liberal construction than is allowable to private trusts or in cases of gifts to private individuals."

On page 435 the court said:

"We think the rule to be well established in this country, in construing charitable trusts, that if the founder thereof describes in the instrument by which he creates the charitable trust the general nature thereof and names the class of beneficiaries, he may leave the details of its administration to be settled by the trustees, under the guidance of a court of equity (*In re Upham Estate*, 127 Cal. 90, 56 P. 315), and that where exact conformity to the plan of the person who has provided by his will for the charitable trust cannot be carried out in exact detail such object will be attained and duty performed with as close approximation to the original plan as is reasonably practicable,

provided the same is in conformity and consistent with the charitable purposes named by the founder; that, at least, a court of equity will not permit such charitable trust to fail because of some slight deviation or change from the original plan, if the general purpose named by the creator of the trust is still attained.''

The Court, in *Fenn College* v. *Nance,* went on to add the following:

Now two doctrines have been developed in equity to aid in sustaining trusts under altered circumstances, *cy pres* and *deviation.* *Cy pres* means ''as nearly as may be.'' The doctrine is a simple rule of judicial construction, designed to aid the court to ascertain and carry out, as nearly as may be, the intention of a donor of a gift to provide for the future. It is properly applied only where it is or has become impossible beneficially to apply the property left by the donor in the exact way in which he has dedicated it to be applied, and it can only be applied beneficially to similar purposes by different means. See 15 American Jurisprudence 2d, Sections 131-134; Scott on Trusts, Section 399, p. 2824.

*Deviation* is sanctioned by a court of equity to permit a departure from the terms of a trust where compliance is impossible or illegal, or where changed circumstances, not known or anticipated by a donor, would defeat or substantially impair the purpose of the trust. See: Scott on Trusts, Section 381, page 2738; 2 Restatement of Trusts 2d, Section 381, page 273. For a learned dissertation on the distinction between the two doctrines see *Craft, Exrx.,* v. *Shroyer* (1947), 81 Ohio App. 253, at page 272, *et seq.*

In Restatement of the Law 2d, Trusts, Section 167, page 351, it is stated:

''Sec. 167. Change of Circumstances

''(1) The court will direct or permit the trustee to deviate from a term of the trust if owing to circumstances not known to the settlor and not anticipated by him compliance would defeat or substantially impair the accomplishment of the purposes of the trust; and in such case, if necessary to carry out the purpose of the trust, the court may direct or permit the trustee to do acts which are not

authorized or are forbidden by the terms of the trust."
(See also 54 Ohio Jurisprudence 2d, Trusts, Section 167.)

After a careful consideration of Item IV of the Anna Roth will which established the trust fund, it is the opinion of this court that a reasonable interpretation and application of the express language therein employed allows its benefits to embrace those in our city and county who are "medically indigent," and that the reasonable cost of treatment, including surgery, may be afforded to persons in that category who are afflicted with or found to be predisposed to any disease of the eye that may threaten blindness. It is the further opinion of this court that the provisions expressly and impliedly permit the application of the income from the trust fund to the purchase of such supplies and equipment as will assist in such treatment or surgery.

The court is also of the opinion that the doctrines of "cy pres" and "deviation," as hereinabove noted and defined, are applicable to the Anna Roth trust fund, in view of the changed circumstances resulting from the discovery and development of new drugs and new techniques and equipment for the detention, prevention and treatment of eye diseases, and such doctrines warrant and require the conclusions reached in this case.

Thus a proper regard for the intent of the late Anna Roth, as indicated and reflected in her last will and testament, compels this court to declare and rule as follows:

(1) The trust is valid and operative, and has not terminated. It *is possible* to carry out its purpose in accord with the intent of the donor, notwithstanding that all of the income of the trust fund has heretofore not been expended as rapidly as accrued.

(2) Beneficiaries of the trust described in paragraph (b) of Item IV of the will as "those who have no apparent means of their own" include those who qualify as "medically indigent," and are not restricted to those heretofore considered to be "poverty stricken or destitute."

(3) The trustee may apply income from the trust fund

for the purchase and use of drugs and for the purchase or replacement of such equipment as may in its judgment be required for the detection, discovery and treatment, including surgery, of beneficiaries of the trust fund who may be threatened or afflicted with eye disease which may cause blindness.

(4) Equipment purchased in accordance with this decision may be placed in either or both Community Hospital and Mercy Medical Center, in the city of Springfield, Ohio, provided however that such equipment is made available without cost to all those who may be considered beneficiaries of the trust fund. The use of such equipment may also be extended to those able to pay, provided that reasonable fees for such use be charged and collected and the trustee reimbursed therefor. Income so derived shall be returned to the trust fund and considered and construed as ''income'' of the trust fund.

(5) Only ''income'' which has accrued or accumulated may be expended, applied or pledged for the purchase of services, supplies and equipment as provided for in this decision. The corpus of the trust fund may not be used for any purpose without the express approval of this court.

(6) The trustee is directed to draft, adopt and apply such regulations and guidelines as will define and set forth the beneficiaries of the trust fund and the manner of purchase and use of any equipment purchased pursuant to this decision.

(7) The trustee shall annually file its accounting of receipts and disbursements in the Probate Court of Clark County, Ohio, as provided and directed by the will of Anna Roth.

(8) The city law director is directed to draft and submit an entry in accordance with this decision and the rules of the Court of Common Pleas of Clark County, Ohio, the costs of this action to be paid by the plaintiff.

Upon submission and approval of an entry according to this decision, the court will rule on several applications filed seeking counsel fees for attorneys participating in this action.