883 P.2d 24 (1993)
In the Matter of the ESTATE OF Martha Emily VALLERY, Deceased.
GEORGE W. VALLERY MEMORIAL FUND, INC., Petitioner-Appellant,
v.
SAINT LUKE'S COMMUNITY FOUNDATION, INC., Presbyterian/Saint Luke's Community Foundation, Inc., a/k/a P/SL Foundation, Inc., Respondent-Appellee.
No. 92CA2017.
Colorado Court of Appeals, Div. IV.
December 30, 1993.
Rehearing Denied April 21, 1994.
Certiorari Denied October 11, 1994.
*26 Robert W. Caddes, Denver, for petitioner-appellant.
Holme Roberts & Owen LLC, Stephanie M. Tuthill, Sharon A. Higgins, Denver, for respondent-appellee.
Opinion by Chief Judge STERNBERG.
Petitioner, George W. Vallery Memorial Fund, Inc. (Knights Templar), appeals from an order of the Denver Probate Court interpreting the will of decedent, Martha Vallery, in favor of respondent, Presbyterian/St. Luke's Community Foundation, Inc. (Foundation). We affirm.
Upon decedent's death in 1937, her will was admitted to probate. In the will, decedent devised the residue of her estate to the Presbyterian Hospital Association (Hospital) by a provision that stated:
All the rest, residue and remainder of my property, whether real, personal or mixed, and wheresoever situate, I give devise and bequeath unto the Presbyterian Hospital Association of Colorado for the following uses and purposes....
After directing that a hospital room be set aside and furnished, and that a plate be mounted on the door of such room, the will then provides:
I direct that the income only from the balance so given said hospital association be used solely for the purpose of defraying the cost of hospitalization of such Knights Templar who shall be members of any Commandery in Denver, Colorado, and who ... shall be in need of assistance in the payment ... of the cost of such hospitalization.... I desire that such of my property ... shall be placed and kept by the management of said hospital association in a separate fund to be known as the GEORGE W. VALLERY HOSPITAL FUND and the said management shall have full and absolute control over such fund, the investment and reinvestment thereof and the disbursements therefrom.... I do request that said hospital management render reports at least annually to each Commandery in Denver, Colorado, showing the amount of principal and interest in said fund.
In 1938, decedent's residuary estate (the Fund) was delivered to the Hospital, subject to the foregoing restrictions. The Fund was held by the Hospital, or its successor, until 1986 when it was transferred to the Foundation in connection with the court-supervised liquidation of the then-owner, Presbyterian/St. Luke's Medical Center. The Hospital Fund then ceased to be maintained as a separate fund. The last disbursement from the Fund was in 1965, and the most recent annual report is dated 1974. The Fund was "re-discovered" in 1990 when the treasurer of one of the Knights Templar Consistories discovered a series of annual reports from the Hospital to the five Consistories.
In 1991, the "George W. Vallery Memorial Fund, Inc.," a nonprofit corporation, was formed by the leaders of the three remaining Knights Templar Commanderies in Denver for the purpose of administering the Fund. Knights Templar filed a petition with the Denver Probate Court requesting, among other things, that the court enter an order requiring the Foundation to pay the Fund to the court registry for ultimate transfer to the Knights Templar.
The Knights Templar claimed that the language of the will created a gift in trust for the benefit of members of Denver Knights Templar Commanderies; that the Hospital breached its duties as trustee and ceased to exist at some point, thus creating a vacancy in the office of trustee; and that, because the Hospital had no power to transfer the Fund, the Foundation has no right, title, or interest to or in the Fund. The Knights Templar requested that the Hospital Fund be transferred to it as trustee.
The Foundation filed an objection to the petition and a cross-petition. It asserted that the Fund constituted an outright restricted *27 gift to the Hospital, rather than a gift in trust, and that the Hospital properly transferred ownership of the Fund to the Foundation. The Foundation requested that the court enter an order reforming the will, claiming that strict compliance with certain restrictions placed on the Fund had become impracticable.
At the trial court's suggestion, the Knights Templar and the Foundation entered into a partial stipulation in which they agreed that two parts of decedent's instructions in the will had become impracticable and should be eliminated, and also agreed that a provision restricting use of the Fund to Knights Templar should not be modified. They continued to disagree on whether ownership of the Fund should be transferred from the Foundation to the Knights Templar and whether a fourth requirement should be reformed.
After a hearing on these issues, the trial court concluded that the Fund should not be transferred to the Knights Templar, finding that decedent intended to make an outright restricted gift to the Hospital rather than a gift in trust. The court also determined that changed circumstances warranted reformation of the will to permit income from the Fund to be used for broader health care purposes than just hospitalization.

I.
In this appeal, Knights Templar initially asserts that, in devising the residue of her estate to Presbyterian Hospital to be used for specific purposes, decedent intended to create a gift in trust rather than an outright restricted gift. We do not agree.
In construing a will, the court must ascertain the testator's actual intent from the will in its entirety and must then carry out that intent unless it is prohibited by law. In re Dewson's Estate v. Smith, 181 Colo. 189, 509 P.2d 311 (1973). Colorado recognizes that the intent to create a trust can be inferred from the nature of property transactions, the circumstances surrounding the holding and transfer of property, the particular documents or language used, and the conduct of the parties. See Matter of Estate of Daniels, 665 P.2d 594 (Colo.1983). However, while no particular language must be used to create a trust or to manifest the necessary intention to create a trust, this inference should not come easily. Bishop & Diocese of Colorado v. Mote, 716 P.2d 85 (Colo.), cert. denied, 479 U.S. 826, 107 S.Ct. 102, 93 L.Ed.2d 52 (1986). Clear, explicit, definite, unequivocal, and unambiguous language or conduct establishing the intent to create a trust is required. Bishop & Diocese of Colorado v. Mote, supra; Goemmer v. Hartman, 791 P.2d 1238 (Colo.App.1990).
Thus, even though formal or technical words are not necessary, see Marshall v. Grauberger, 796 P.2d 34 (Colo.App.1990), the fact that the document makes no mention of a "trust" is significant in determining whether a trust was intended. See Denver Chapter No. 145, Order of Ahepa v. Mile Hi City Chapter No. 360, 171 Colo. 541, 469 P.2d 740 (1970).
It is presumed that the testator knew the law when drafting the will. And, a trust will not be inferred when the writing imports a grant of absolute ownership to the donee and then includes additional words expressing the donor's wish as to the use or disposition of the property. Gately v. El Paso County Bar Ass'n, 137 Colo. 599, 328 P.2d 381 (1958).
Here, in a portion of her will separate from the one at issue, decedent used language that shows she was familiar with trust concepts and understood how to create a testamentary trust. She used the words "in trust" to convey her intent to create a trust, expressed an understanding that her named trustee would be subject to trust laws by allowing him to serve "without bond," acknowledged that the trustee was receiving the legacy only on behalf of trust beneficiaries by providing that the trustee's receipt of the sum "shall be a full quittance of my executors," and provided that no court should exercise continuing jurisdiction over the "trust fund."
Thus, had decedent intended to bequeath the Fund in trust to the Hospital, she well knew how to accomplish such purpose and would have used words of known and indisputable meaning as she did in the above part *28 of her will. Significantly, she used no such words in the paragraph here at issue, but instead used words equally well known and of indisputable meaning"I give, devise, and bequeath." See Gately v. El Paso County Bar Ass'n, supra. The testator used these words in six of the other seven articles of her will, which served to dispose of the whole of her property, and none of these bequests is in trust.
Moreover, another article of her will illustrates a similar outright restricted gift, in which the decedent bequeathed $5000 to the Knights Templar, the income only to be used for charitable purposes.
When, as here, a testator has demonstrated that she knows how to create a trust and does not do so, we must necessarily conclude that the testator intended the gift as outright. See, e.g., Wright v. Poudre Valley National Bank, 153 Colo. 255, 385 P.2d 412 (1963).
Because we agree with the trial court's determination that the will provision at issue created an outright but restricted gift rather than a trust, we need not address petitioner's contention that the residual legatee breached its duties as trustee or improperly transferred the Fund to the Foundation.

II.
Application of the cy pres doctrine was warranted under the circumstances of this case; therefore, we also disagree with petitioner's argument that the probate court erroneously reformed the terms of the residuary clause.
Under the cy pres doctrine, equity allows deviation from the terms of a charitable bequest when the particular purpose of the gift becomes impossible or impracticable to accomplish and the donor manifested a more general intention to devote the property to charitable purposes. See Fisher v. Minshall, 102 Colo. 154, 78 P.2d 363 (1938).
Although the cy pres doctrine ordinarily applies to charitable trusts, we perceive no sound reason to require the existence of a formal trust, as such. In our view, it is sufficient if there is a bequest to a charity even in the absence of an express trust in the will. In a sense, it can be said that a charity always receives the gift "in trust" for its purposes. See In re Estate of Bletsch, 25 Wis.2d 40, 130 N.W.2d 275 (1964).
We hold that, even in the absence of a formal trust, the doctrine of cy pres is available when there is an absolute bequest to a charitable organization. See IVA Scott on Trusts §§ 348.1 & 399 (W. Fratcher 4th ed. 1989); G. Bogert, Trusts & Trustees § 431 (1991 Repl. Vol.); see also Miller v. Mercantile-Safe Deposit & Trust Co., 224 Md. 380, 168 A.2d 184 (1961) (cy pres is as applicable to absolute bequest to charitable organization as it is to bequest in trust).
A purpose becomes "impracticable" under the cy pres doctrine when it appears that under the circumstances the application of the property to that designated purpose would fail to accomplish the general charitable intention of the testator. Dunbar v. Board of Trustees of George W. Clayton College, 170 Colo. 327, 461 P.2d 28 (1969). Such difficulty need be only a reasonable one and not such as to make the donor's plan a physical impossibility.
In such circumstances, when a general charitable purpose is disclosed with reasonable clarity, the donor's directions as to management of the gift and the precise manner of its application may be regarded as directory rather than mandatory, if necessary to carry out its main purpose. See Annot. 68 A.L.R.3d 1049 (1965). It will be presumed that the details were meant to be subject to unforeseen and unforeseeable circumstances which might render them impracticable. See Moore v. City & County of Denver, 133 Colo. 190, 292 P.2d 986 (1956); see also City of Springfield v. Patterson, 26 Ohio Misc. 242, 270 N.E.2d 683 (1970); 3 A.L.R.2d 6 (1965). The court then may make such modifications in the bequest so as to effectuate the donor's intent as nearly as possible. Fisher v. Minshall, supra.
In this case, the trial court determined that decedent had a general charitable purpose to underwrite for needy members of the Knights Templar a major expense of serious illness or injury, hospital costs, and *29 concluded that the underlying purpose of the gift was to assist in defraying the biggest financial barrier to adequate health care. Based on expert testimony, the court further found that, in 1937 when the testator died, hospitalization costs usually were borne by the patient; whereas, today, third-party payment of hospitalization costs is nearly universalan unforeseeable circumstance in 1937. The court also took judicial notice of the different diagnostic and treatment procedures that have evolved over the intervening years.
In view of the ever-expanding aspects of medicine as practiced in hospitals today, preventive, diagnostic, and therapeutic, the trial court concluded that continued adherence to the literal restriction only to pay "hospitalization costs" would frustrate decedent's general charitable intention to assist financially in the care and treatment of gravely ill, needy Denver Knights Templar.
The exercise of the cy pres doctrine involves a large measure of discretion. The trial court did not abuse that discretion in holding that the restriction of the Fund to "hospitalization costs" has become an impracticable limitation during the 58 years which have passed since the 1935 will was drafted. Because the trial court's findings are supported by competent evidence on the record, we will not disturb its reformation of decedent's will to permit income from the Fund to be used to defray the costs of other health care services provided by the Hospital for needy Knights Templar in addition to their hospitalization costs.
Order affirmed.
JONES and RULAND, JJ., concur.