25CA1036 Matter of Pedot Trust 05-07-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1036
Adams County District Court No. 24PR30568
Honorable Sara Price, Judge

---

In the Matter of the Laurel Lee Pedot Trust,

Wells Fargo Bank, N.A., Trustee,

Petitioner,

and

Catholic Health Initiatives Colorado and Catholic Health Initiatives Colorado Foundation,

Appellees,

v.

Sunny Acres Healthcare, LLC, d/b/a Villas at Sunny Acres, a Nevada limited liability company, and Sunny Acres Health Holdings LLC, a Nevada limited liability company,

Appellants.

---

ORDER REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE BROWN
Freyre and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 7, 2026

---

Jones & Keller, P.C., D. Laird Blue Jr., Denver, Colorado, for Petitioner

Polsinelli PC, Bennett L. Cohen, Richard M. Murray, Jeffrey Glogower, Denver, Colorado, for Appellees Catholic Health Initiatives Colorado and Catholic Health Initiatives Colorado Foundation

Steptoe & Johnson PLLC, Deva A. Solomon, Amber M. Moore, Denver, Colorado, for Appellants

¶ 1     Respondents Sunny Acres Healthcare, LLC, d/b/a Villas at Sunny Acres, and Sunny Acres Health Holdings LLC (collectively, Sunny Acres) appeal the district court's order reforming the Laurel Lee Pedot Trust (the Trust) to name respondents Catholic Health Initiatives Colorado and Catholic Health Initiatives Colorado Foundation (collectively, CHIC) as the "non-profit beneficiary of the Trust." We reverse and remand for the court to modify the Trust in a manner consistent with this opinion.

## I.     Background

¶ 2     Laurel Lee Pedot was a long-time resident of a long-term care community, The Villas at Sunny Acres (alternately, the Community). In 1989, Pedot executed her last will and testament and accompanying trust agreement. The trust agreement provided that, upon Pedot's death, the residue of her estate would be bequeathed to "SUNNY ACRES VILLA, INC., FOUNDATION TRUST, a Colorado non-profit corporation, presently located at 2501 East 104th Avenue, [Thornton], Colorado 80233."[1]

---

[1] The parties agree that "The Villas at Sunny Acres community" is in Thornton, Colorado, rather than Denver, Colorado, as Pedot indicated in the trust agreement.

¶ 3     In 1991, Pedot amended the trust agreement, clarifying her

bequest as follows:

> The entire remaining Trust estate shall be
> distributed to SUNNY ACRES VILLA, INC.,
> FOUNDATION TRUST, a Colorado non-profit
> corporation, presently located at 2501 East
> 104th Avenue, [Thornton,] Colorado 80233, to
> be used exclusively in connection with The
> Villas at Sunny Acres community located at
> 2501 East 104th Avenue, [Thornton], Colorado
> 80233, and no other community operated by
> SUNNY ACRES VILLA, INC.

¶ 4     Pedot died in November 2023.  Upon her death, Wells Fargo

Bank, N.A., the Trustee of the Trust, determined that the entity

identified as the beneficiary of the Trust, "SUNNY ACRES VILLA,

INC., FOUNDATION TRUST," "ha[d] never been . . . registered with

the Colorado Secretary of State to do business in Colorado" and did

not exist.  Instead, the Trustee identified "Sunny Acres Villa, Inc., a

Colorado Nonprofit Corporation" (SAV Nonprofit), as the owner and

operator of Community both when Pedot executed the Trust in 1989

and when she amended it in 1991.

¶ 5     The Trustee also discovered that CHIC, a Colorado nonprofit

corporation, had succeeded SAV Nonprofit and had become the

registered owner of the Community in 2000.  But in 2015, CHIC

2

sold the Community to Sunny Acres, a Nevada for-profit corporation. Sunny Acres presently owns and operates the Community.

¶ 6      Because the beneficiary identified in the Trust did not exist, and because the ownership of the Community changed after the Trust was formed but before Pedot's death, the Trustee filed a petition in the district court requesting instructions concerning the ascertainment of beneficiaries of the Trust. Specifically, the Trustee requested that the court determine (1) whether Pedot "had a charitable purpose" when creating the Trust and, if so, whether the doctrine of cy pres should apply to modify the trust agreement; (2) whether "modification of the [t]rust [a]greement [wa]s necessary and proper, because of circumstances not anticipated by [Pedot], [to] further the purposes of the Trust"; (3) whether "reformation of the [t]rust [a]greement [wa]s necessary and proper, because of a mistake of law or fact, to conform the terms of the [t]rust [a]greement to . . . [Pedot's] intentions"; and (4) whether Pedot intended "SUNNY ACRES VILLA, INC., FOUNDATION TRUST" "to refer to SAV Nonprofit, or some other ascertainable beneficiary."

¶ 7    Sunny Acres filed a response to the Trustee's petition, requesting a hearing and arguing that the plain language of the trust agreement unambiguously provided that "Pedot intended her bequest to benefit The Villas at Sunny Acres, the [C]ommunity," located at the address reflected in the trust agreement.  As a result, Sunny Acres argued, the Trust "should be reformed to designate [Sunny Acres] as the trust beneficiary," and the Trustee should be instructed to distribute Pedot's bequest to Sunny Acres.

¶ 8    Sunny Acres attached an affidavit from Stepheni Passanante, a former social worker and the current assistant nursing home administrator at the Community.  Passanante averred that she knew Pedot personally from 2017 until her death in 2023.  During that time, Pedot told Passanante and other employees repeatedly that her "money was going to Villas at Sunny Acres" and that she "was proud of her prior financial contributions to Villas at Sunny Acres."  Passanante indicated that Pedot "was aware that Villas at Sunny Acres had changed ownership and was a for-profit entity."  Based on this evidence, Passanante believed that "Pedot wanted Villas at Sunny Acres to be the beneficiary of her estate."

¶ 9    CHIC also filed a response to the Trustee's petition, objecting to Sunny Acres as a potential beneficiary and arguing instead that CHIC was entitled to Pedot's bequest. Specifically, CHIC argued that its corporate predecessor, SAV Nonprofit, owned and operated the Community at the time Pedot created the Trust in 1989 and when she amended it in 1991. CHIC also argued that "Sunny Acres Villa, Inc., Foundation," a name similar to the designated beneficiary of the Trust, was a trade name of CHIC registered with the Colorado Secretary of State. CHIC argued that, by expressly naming a nonprofit corporation as the beneficiary of the Trust, Pedot demonstrated her charitable intention. Therefore, CHIC contended that the court should apply the doctrine of cy pres "to expand . . . the use and purpose of the gifts set out in [Pedot's] Trust and [w]ill so that CHIC . . . can use the gifts for its other programs that benefit individuals in the Denver, Colorado, Metropolitan area and not just The Villas [at Sunny Acres]."

¶ 10    A supporting affidavit from Paul Ross, CHIC's vice president for philanthropy and chief philanthropy officer, highlighted Pedot's history of charitable giving to the organization, citing three gifts Pedot made to CHIC before it sold the Community to Sunny Acres,

5

which totaled $177,764. CHIC asserted that the prior donations offered further evidence of Pedot's intent to leave the residue of her estate to CHIC's predecessor, SAV Nonprofit.

¶ 11 The district court held a hearing to review the Trustee's petition and receive arguments from the responding parties. Sunny Acres and CHIC agreed that the "background facts" were not in dispute and consented to the court ruling on the pleadings. In a written order, the court found that (1) Pedot "had a charitable purpose and intent when the [Trust] and its [a]mendments were executed"; (2) Pedot "intended 'Sunny Acres Villa, Inc., Foundation Trust' to refer to" SAV Nonprofit; (3) the Trust should be reformed under the doctrine of cy pres because "[Pedot's] charitable purpose [wa]s impossible to achieve based on the sale of Sunny Acres Villa, Inc., to a for-profit corporation"; and (4) "modification of the Trust [wa]s necessary due to circumstances not anticipated by [Pedot]." The court ordered that "the Trust be reformed to name [CHIC] as the non-profit beneficiary of the Trust." This appeal followed.

## II. Standard of Review and Applicable Law

¶ 12 The interpretation of a trust is a question of law that we review de novo. *Kathrine E. Reece Tr. v. Reece*, 2023 COA 89, ¶ 12. Our

objective in construing a trust is to determine the settlor's intent. *Denv. Found. v. Wells Fargo Bank, N.A.*, 163 P.3d 1116, 1122 (Colo. 2007); *see In re Trs. Created by Ferguson*, 929 P.2d 33, 35 (Colo. App. 1996) ("In the interpretation of a trust, the intent of the settlor or testator must be given effect."). To determine a settlor's intent, "we read and interpret all the various documents at issue, as a whole, to give effect to the [settlor's] wishes in establishing the [t]rust." *Denv. Found.*, 163 P.3d at 1122. In doing so, "we construe the [t]rust instruments in their entirety to harmonize and give effect to all the provisions, rendering none meaningless or superfluous." *Id.* "[W]e also consider relevant circumstances in effect at the time the . . . [t]rust [a]greement was executed to understand and find meaning in the instrument." *Id.*

¶ 13    If the terms of the trust agreement are unambiguous, "extrinsic evidence may not be considered to cast 'doubt upon the meaning of the language used and [render] such language susceptible to a different meaning.'" *In re Estate of Gross*, 646 P.2d 396, 397 (Colo. App. 1981) (quoting *In re Estate of Dewson*, 509 P.2d 311, 312 (Colo. 1973)). But if an ambiguity appears within the text of the trust agreement, "extrinsic evidence may be considered

7

to resolve that ambiguity." *Id.* at 397. An "[a]mbiguity may exist where a written instrument is susceptible to two meanings, or where there is uncertainty as to the meaning of a term." *Ferguson*, 929 P.2d at 35.

¶ 14    A court has discretion to reform or modify the terms of a trust agreement under certain circumstances, three of which are relevant here. First, under the doctrine of cy pres, a court may modify "the terms of a charitable bequest when the particular purpose of the gift becomes impossible or impracticable to accomplish and the donor manifested a more general intention to devote the property to charitable purposes." *In re Estate of Vallery*, 883 P.2d 24, 28 (Colo. App. 1993); *see* § 15-5-413, C.R.S. 2025 (codifying the doctrine of cy pres). A charitable purpose "becomes impracticable when it appears that under the circumstances the application of the property to that designated purpose would fail to accomplish the general charitable intention of the testator." *Dunbar v. Bd. of Trs. of George W. Clayton Coll.*, 461 P.2d 28, 30 (Colo. 1969).

¶ 15    Second, section 15-5-412(1), C.R.S. 2025, grants courts discretion to "modify the administrative or dispositive terms of a trust or terminate the trust if, because of circumstances not

8

anticipated by the settlor, modification or termination will further the purposes of the trust." *See In re Maxwell*, 2026 COA 10, ¶ 21 n.5 ("Section 15-5-412 . . . essentially codifies the doctrine of equitable deviation, which allows a court to change the way that a trust is administered because of unanticipated changed circumstances."); *see also Beyer v. First Nat'l Bank of Colo. Springs*, 843 P.2d 53, 62 (Colo. App. 1992) (the dispositive terms of a trust are those that control the distribution of trust income and principal). "To the extent practicable, the modification must be made in accordance with the settlor's probable intention." § 15-5-412(1).

¶ 16   Finally, in instances where "the settlor's intent and the terms of the trust were affected by a mistake of fact or law, whether in expression or inducement," section 15-5-415, C.R.S. 2025, grants a court the discretion to "reform the terms of [the] trust, even if unambiguous, to conform the terms to the settlor's intention."

¶ 17   The modification or reformation of a trust instrument is an equitable remedy. *See Bd. of Comm'rs v. Timroth*, 87 P.3d 102, 105 (Colo. 2004). Ordinarily, "[t]he power to fashion equitable remedies lies within the discretion of the trial court," and "[w]e will not

disturb such rulings on review absent an abuse of discretion."
*Beren v. Beren*, 2015 CO 29, ¶ 12; *see Vallery*, 883 P.2d at 29 ("The exercise of the cy pres doctrine involves a large measure of discretion." (emphasis omitted)); *Niemann v. Vaughn Cmty. Church*, 113 P.3d 463, 470 (Wash. 2005) (the doctrine of equitable deviation provides equitable relief, and courts have broad discretion to permit a deviation).  But in this case, the district court based its decision entirely on the parties' pleadings and affidavits.  The parties agreed that the facts were undisputed and that the court could resolve the matter without evaluating the evidence or making credibility determinations.  "We are therefore in as good a position as the district court to determine whether the evidence presented — all of which was undisputed — supports modification of the [Trust] . . . ." *Maxwell*, ¶ 29.  Thus, we review the court's order de novo.  *See id.*

### III.   Analysis

¶ 18      Sunny Acres contends that the district court erred by (1) failing to recognize that the Trust unambiguously designated "The Villas at Sunny Acres community" as the intended beneficiary; (2) concluding that Pedot had a general charitable purpose for the Trust; and (3) reforming the Trust under the doctrine of cy pres to

10

designate CHIC as the beneficiary. Sunny Acres also argues that the court failed to provide "the legal basis for its conclusions, rendering its [o]rder insufficient as a matter of law."

¶ 19 We generally agree with Sunny Acres that the district court provided little explanation for its decision. For example, the court determined that Pedot had a "charitable purpose" when executing the trust agreement and that her purpose had become "impossible to achieve based on the sale of Sunny Acres Villa, Inc., to a for-profit corporation."[2] But the court did not explain what Pedot's charitable purpose was or how that purpose was thwarted by the sale of the Community to Sunny Acres — other than to note that Sunny Acres is a for-profit corporation. In addition, because CHIC does not own or operate "The Villas at Sunny Acres community," the court's order necessarily eliminates Pedot's express restriction that her bequest be used "exclusively in connection with The Villas at Sunny Acres community . . . and no other community operated

---

[2] The district court found that "Sunny Acres Villa, Inc." was sold to Sunny Acres, but the record does not appear to support that finding. Instead, as best we understand, CHIC remains a successor to "Sunny Acres Villa, Inc." — or what we have referred to as SAV Nonprofit — but it sold "The Villas at Sunny Acres community" to Sunny Acres.

by [SAV Nonprofit]," but the court did not explain how that modification was consistent with Pedot's intent.

¶ 20    Although we do not fully understand the district court's order, because our review is de novo, *see Maxwell*, ¶ 29, we need not remand for clarification.  Instead, we conclude that (1) Pedot intended to identify SAV Nonprofit as the beneficiary of the Trust; (2) Pedot did not have a general charitable purpose for the Trust; (3) the doctrine of cy pres does not apply; and (4) the singular purpose of the Trust was to benefit "The Villas at Sunny Acres community . . . and no other community."  We further conclude that the Trust's beneficiary must be modified under section 15-5-412 to accomplish Pedot's intended purpose.

    A.    The District Court Did Not Err by Determining that Pedot
          Intended to Name SAV Nonprofit as the Trust's Beneficiary

¶ 21    Sunny Acres contends that the district court erred by "failing to recognize that Ms. Pedot's trust documents are unambiguous" and that the Trust "clearly and specifically state[s] that The Villas [at Sunny Acres]" was Pedot's intended beneficiary.  CHIC counters that the court correctly identified SAV Nonprofit, its corporate

predecessor, as the intended beneficiary of the Trust based on the unambiguous language of the trust agreement.

¶ 22 The court found that Pedot intended to identify SAV Nonprofit as the named beneficiary in the Trust. But it is unclear whether the court determined Pedot's intent from the unambiguous language of the trust agreement or whether it deemed the trust agreement to be ambiguous and considered extrinsic evidence to resolve the ambiguity. On de novo review, *see Maxwell*, ¶ 29, we conclude that the trust agreement is ambiguous as to the named beneficiary but that the undisputed evidence establishes that Pedot intended SAV Nonprofit to be the Trust's beneficiary.

¶ 23 The trust agreement plainly identifies "SUNNY ACRES VILLA, INC., FOUNDATION TRUST" as the named beneficiary of the Trust. Both responding parties concede that no corporation or organization with that name exists or has ever been registered with the Colorado Secretary of State. Because the Trust expressly names a beneficiary that did not and does not exist, there is "uncertainty as to the meaning of a term" in the trust agreement. *Ferguson*, 929 P.2d at 35. Accordingly, the trust agreement is

ambiguous, and we may consider extrinsic evidence to resolve the ambiguity. *See Gross*, 646 P.2d at 397.

¶ 24 Neither party truly disputes that Pedot's reference to "SUNNY ACRES VILLA, INC., FOUNDATION TRUST" was intended to refer to SAV Nonprofit.[3] And the weight of the uncontested evidence reflects that SAV Nonprofit was Pedot's intended beneficiary.

¶ 25 SAV Nonprofit owned and operated "The Villas at Sunny Acres community" at the time Pedot executed and amended the Trust. Because Pedot expressly designated that her bequest be used exclusively in connection with "The Villas at Sunny Acres community," it is reasonable that she would designate the owner of the property at the time as the Trust's beneficiary. *See Reece,* ¶ 17 ("[A] court must construe a testator's intent in light of the

---

[3] To the extent Sunny Acres argues that Pedot intended "The Villas at Sunny Acres community" itself to be the beneficiary of the Trust, we reject that argument. The Community cannot be a "beneficiary" of a trust, § 15-5-103(4)(a), C.R.S. 2025 (defining "[b]eneficiary" as "a person who . . . [h]as a present or future beneficial interest in a trust . . . or . . . holds a power of appointment over trust property"), because it is not a "person," § 15-5-103(13) (defining "[p]erson" as "an individual; corporation; business trust; estate; trust; partnership; limited liability company; association; joint venture; government; governmental subdivision, agency, or instrumentality; public corporation; or any other legal or commercial entity").

circumstances present when the will was executed."). Indeed, Pedot's directive that her bequest was not to be used in connection with any "other community operated by [SAV Nonprofit]" confirms this interpretation. Further, uncontested evidence established that, at the time Pedot executed the trust agreement, SAV Nonprofit was directing individuals seeking to make bequests to the Community to name "SUNNY ACRES VILLA, INC., FOUNDATION TRUST" in the governing documents.

¶ 26     Thus, we discern no error in the court's finding that Pedot intended SAV Nonprofit to be the beneficiary of the Trust.[4]

### B.     The District Court Erred by Determining that Pedot Executed the Trust with a General Charitable Intent

¶ 27     Sunny Acres contends that the district court erred by finding that Pedot created the Trust with a general charitable intent. We agree.

---

[4] We acknowledge that Pedot's reference to "SUNNY ACRES VILLA, INC., FOUNDATION TRUST" reflects a mistake of fact that could be reformed under section 15-5-415, C.R.S. 2025, to correctly identify SAV Nonprofit as the designated beneficiary. But, as discussed below, we conclude that a different modification of the Trust better effectuates Pedot's intent.

15

¶ 28 Express trusts are generally either charitable or noncharitable in nature. § 15-5-102, C.R.S. 2025. A "[c]haritable trust" is "a trust, or a portion of a trust, created for a charitable purpose described in section 15-5-405(1)[, C.R.S. 2025]." § 15-5-103(6), C.R.S. 2025. Those charitable purposes include the "relief of poverty; the advancement of education or religion; the promotion of health, governmental, or municipal purposes; or other purposes the achievement of which is beneficial to the community." § 15-5-405(1).

¶ 29 The beneficiary of a charitable trust is "the unspecified, indefinite general public to whom the social and economic advantages of the trust accrues." *Denv. Found.*, 163 P.3d at 1125. "Instead of identifying a person or corporation as beneficiary, the settlor of a charitable trust must describe a purpose which is of substantial public benefit." *Id.* It follows that, if the trust identifies a definite beneficiary, such as a person or corporation, and describes a specific purpose for the use of the bequest that fails to substantially benefit the community at large, then the trust will not be deemed charitable in nature. *See* Restatement (Third) of Trusts § 27(1) (A.L.I. 2003) ("[A] trust may be created for charitable

purposes or for private purposes, or for a combination of charitable and private purposes." (citation omitted)); *id.* § 27(2) cmt. b ("The general purpose of a private trust is to benefit identified or identifiable beneficiaries . . . in accordance with their respective interests in the trust."); *id.* § 28 cmt. f (a charitable trust may not be created for a limited purpose that is "so narrowly defined as to benefit only named individuals or a class"); *Denv. Found.*, 163 P.3d at 1125.

¶ 30    The court determined that Pedot had a "charitable purpose" when executing the trust agreement, but it did not explain what that purpose was, if it derived its finding from the unambiguous language of the trust agreement, or if it deemed the trust agreement to be ambiguous and considered extrinsic evidence to resolve the ambiguity. If the latter, it is unclear what undisputed evidence the court credited in making its finding. Nevertheless, we conclude, based on the unambiguous language of the trust agreement, that Pedot did not execute the Trust for a general charitable purpose.

¶ 31    The Trust does not designate the unspecified, indefinite general public as its beneficiary but expressly identifies SAV Nonprofit. *See Denv. Found.*, 163 P.3d at 1125. And rather than

17

prescribing that her bequest be used for a purpose listed in section 15-5-405(1) or a different purpose that otherwise is of substantial public benefit, Pedot expressly restricted her bequest to be "used exclusively in connection with The Villas at Sunny Acres community. . . and no other community." Such a specific and targeted bequest does not provide evidence that Pedot intended to devote the residue of her estate to charitable purposes generally, *see Vallery*, 883 P.2d at 28, but rather establishes that she intended to leave her estate to a specific beneficiary for a specific, limited purpose.

¶ 32   We are not persuaded otherwise by CHIC's argument that, by expressly naming a nonprofit corporation as the beneficiary of the Trust, Pedot demonstrated her charitable intent. True, Pedot named a beneficiary that was, at the time, a "Colorado non-profit corporation." But merely identifying the corporate status of the intended beneficiary, without more, does not reflect Pedot's intent to establish a charitable trust. Instead, we must view the Trust as a whole. *See Denv. Found.*, 163 P.3d at 1122. And when we do so, we see that Pedot intended to create a private, noncharitable trust solely to benefit the Community where she resided for decades.

¶ 33    We are also not persuaded by CHIC's argument that, because the Trust did "not indicate a particular charitable purpose or beneficiary," the district court was authorized to "select one or more charitable purposes or beneficiaries" under section 15-5-405(2). CHIC reasons that because the Trust's named beneficiary, SAV Nonprofit, has since been succeeded by CHIC, "a non-profit Catholic [healthcare] organization," Pedot created the Trust for "the promotion of religion and [healthcare] purposes," which are charitable purposes listed in the statute. *See* § 15-5-405(1) (identifying "the advancement of . . . religion" and "the promotion of health" as charitable purposes for a trust).

¶ 34    But at the time Pedot executed and amended the Trust, CHIC had not succeeded SAV Nonprofit. And Pedot did not name CHIC the Trust's beneficiary, even though she apparently was aware that CHIC owned and operated "The Villas at Sunny Acres community" before she died. So CHIC's nonprofit status and organizational purpose say little about Pedot's intent for the Trust. *See Denv. Found.*, 163 P.3d at 1122 (we consider relevant circumstances in effect at the time the trust agreement was executed to understand and find meaning in the instrument). Because the trust agreement

is unambiguous as to Pedot's intent that her bequest be used solely to benefit "The Villas at Sunny Acres community . . . and no other community," we will not consider extrinsic evidence that contradicts the plain language of the trust agreement. *See id.* at 1126 ("When the terms of a bequest are unambiguous, it is not permissible for a court to consider extrinsic evidence that casts doubt upon the meaning of the language used and renders such language susceptible to a different meaning.").

¶ 35     Construing the trust agreement and its amendment together, *see id.* at 1122, Pedot's intent for the Trust becomes clear. Pedot specifically designated SAV Nonprofit as the beneficiary of the Trust to ensure that her bequest would be used solely to benefit "The Villas at Sunny Acres community . . . and no other community." *See id.* at 1125. We conclude that the Trust does not manifest Pedot's "general intention to devote the [bequest] to charitable purposes," *Vallery*, 883 P.2d at 28, and that the court erred by so concluding.

## C. The District Court Erred by Applying the Doctrine of Cy Pres to Modify Pedot's Trust

¶ 36 Sunny Acres contends that the district court erred by applying the doctrine of cy pres to modify the Trust in the absence of a charitable purpose. We agree.

¶ 37 The court ordered that the Trust be reformed under the doctrine of cy pres to name CHIC as "the non-profit beneficiary." *See* § 15-4-413(1).[5] Critically though, the doctrine of cy pres may be applied only to reform trusts that were created with a charitable purpose. *Vallery*, 883 P.2d at 28. Because we have concluded that Pedot did not create the Trust for a charitable purpose, we necessarily conclude that the doctrine of cy pres does not apply. *See id.* Thus, the court erred by modifying the Trust under the doctrine of cy pres.

---

[5] The court applied the doctrine of cy pres to reform the Trust because Pedot's "charitable purpose [was] impossible to achieve," but it also determined that it was necessary to modify the Trust "due to circumstances not anticipated by" Pedot. The latter quoted language mirrors section 15-5-412(1), C.R.S. 2025, not the doctrine of cy pres as codified in section 15-5-413(1), C.R.S. 2025. Thus, it is unclear if the court relied solely on the doctrine of cy pres or if it drew support for its modification from section 15-5-412(1) as well.

## D. The Trust Must be Reformed Due to Circumstances Not Anticipated by Pedot

¶ 38 Neither party disputes the district court's finding that it was necessary to modify Pedot's trust "due to circumstances not anticipated by [Pedot]." And because CHIC sold the Community to Sunny Acres in 2015, we agree.

¶ 39 Section 15-5-412(1) gives courts discretion to modify the dispositive terms of a trust if, "because of circumstances not anticipated by the settlor, modification . . . will further the purposes of the trust." If a court determines that modification is necessary, it must modify the trust "in accordance with the settlor's probable intention." *Id.*; *see Vallery*, 883 P.2d at 27 ("[T]he court must ascertain the [settlor's] actual intent . . . [and] then carry out that intent unless it is prohibited by law.").

¶ 40 As explained, the trust agreement's unambiguous terms provide that Pedot intended her bequest to be "used exclusively in connection with The Villas at Sunny Acres community . . . and no other community." To carry out that purpose, Pedot designated the Community's owner and operator at the time, SAV Nonprofit, as the beneficiary of the Trust. CHIC succeeded SAV Nonprofit but sold

22

the Community to Sunny Acres in 2015. Consequently, CHIC is no longer in a position to use Pedot's bequest "exclusively in connection with The Villas at Sunny Acres community . . . and no other community."

¶ 41 Because CHIC is no longer in a position to carry out the fundamental purpose of the Trust due to circumstances not anticipated by Pedot, the Trust must be modified to further Pedot's intent. *See* § 15-5-412(1); *Saunders v. Muratori*, 251 P.3d 550, 554 (Colo. App. 2010) (Courts have authority to "modify or even terminate trusts when circumstances unforeseen by the settlors develop and impair the trusts' original purposes."). The only responding party currently in a position to carry out Pedot's purpose for the Trust is Sunny Acres. As the Community's present owner and operator, Sunny Acres is uniquely positioned to use Pedot's estate "exclusively in connection with The Villas at Sunny Acres community."

¶ 42 We are not persuaded otherwise by CHIC's argument that its "history, resources, and institutional knowledge" position it to use Pedot's bequest to benefit programs, facilities, and clinics in the area surrounding the Community, ultimately benefiting its

23

residents. By arguing that it would use the bequest to benefit its programs and clinics surrounding the Community, CHIC effectively concedes that it is presently unable to use Pedot's bequest in accordance with her expressly stated intent.

¶ 43 Nor are we convinced that directing the Trust proceeds to Sunny Acres, a for-profit corporation, fails to achieve Pedot's intent because the bequest would be used to benefit the corporation's shareholders. Notably, CHIC cites nothing in the record indicating that Sunny Acres would distribute Pedot's bequest to its shareholders. Rather, Sunny Acres' counsel explained that the corporation intended to "carry out Ms. Pedot's intent that the funds benefit [T]he Villas at Sunny Acres" and indicated that Sunny Acres had no "objection to limitations being placed by the [c]ourt" to ensure that happened. Indeed, Sunny Acres' requested relief on appeal is for the court to enter an order that the Trustee distribute Pedot's bequest to Sunny Acres "for the benefit of The Villas at Sunny Acres community . . . and no other community."

¶ 44 Accordingly, to further Pedot's specific, limited purpose for the Trust, we conclude that the Trust must be modified to designate Sunny Acres as the beneficiary. *See* § 15-5-412(1).

24

## IV. Disposition

¶ 45 We reverse the district court's order requiring that "the Trust be reformed to name [CHIC] . . . as the non-profit beneficiary of the Trust." We remand the case to the district court to enter an order that the Trust be modified to name Sunny Acres as the beneficiary and to require Sunny Acres to use the bequest "exclusively in connection with The Villas at Sunny Acres community . . . and no other community."

JUDGE FREYRE and JUDGE SCHUTZ concur.