2009 WY 96

**LAMAR ADVERTISING, a South Dakota corporation, authorized to do business in Wyoming, Appellant (Defendant),**

v.

**LARRY AND VICKIE NICHOLLS, L.L.C., a Wyoming limited liability company, Appellee (Plaintiff).**

No. S–08–0188.

Supreme Court of Wyoming.

Aug. 11, 2009.

**642**

Representing Appellant: Timothy M. Stubson and Orintha E. Karns of Brown, Drew & Massey, LLP, Casper, Wyoming. Argument by Ms. Karns.

Representing Appellee: Frank R. Chapman of Chapman Valdez, Casper, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

KITE, Justice.

[¶ 1] Lamar Advertising (Lamar) appeals from the district court's order granting summary judgment in favor of Larry and Vickie Nicholls, LLC (Nicholls). The district court ruled that a lease allowing Lamar to maintain a billboard on Nicholls' property was void as an unreasonable restraint on alienation. We conclude that the district court applied the wrong legal test when it considered the reasonableness of the restraint. The correct test requires only a showing of a rational justification for the lease. Applying that test to the undisputed facts, we conclude, as a matter of law, the lease did not constitute an improper restraint on alienation. Consequently, we reverse.

**ISSUE**

[¶ 2] Lamar states the issue on appeal as:

Whether the District Court erred by applying the test for a direct restraint on alienation to determine whether a lease between these parties is an unreasonable restraint on alienation.

Nicholls phrases the issue as:

Whether the District Court was correct in applying a reasonableness test to determine the validity of a Lease which created a restraint on alienability.

**FACTS**

[¶ 3] The underlying facts of this case are essentially undisputed. Effective March 1, 1990, Frontier Outdoor Advertising (Frontier) entered into a lease with Cyril Rahonce allowing Frontier to maintain a billboard on Mr. Rahonce's property in Rock Springs, Wyoming. The lease provided that the initial term would be fifteen years, with a provision for automatic renewal if neither party gave notice of its intent to terminate thirty days prior to the end of term. In exchange for allowing Frontier to use his property, Mr. Rahonce was to receive an annual payment of $400. The lease provided it was subject to assignment and its terms would apply to the parties' successors. The lease was not recorded.

[¶ 4] Over the years, ownership of the property changed several times. In 1993, Mr. Rahonce conveyed the property to High Country Landscaping, and Frontier paid the annual lease payment to the new owner. In 1997, Larry and Vickie Nicholls purchased the property from High Country Landscaping. The disputed property was subsequently transferred to the plaintiff limited liability company, Larry and Vickie Nicholls, LLC. Plains Tire and Battery (Plains Tire) was located adjacent to the disputed property, and Mr. and Mrs. Nicholls owned the company that was the majority shareholder of Plains Tire. Plains Tire used the property for parking.

[¶ 5] The lessee also changed after the lease was executed. In 1998, Lamar purchased Frontier and acquired its interest in the lease at issue here. During the time that Nicholls owned the property, Lamar tendered the annual lease payments to Plains Tire and the payments were accepted until 2006.

[¶ 6] On July 26, 2005, Nicholls notified Lamar that the lease had expired and would not be renewed. Lamar claimed the lease had renewed automatically because Nicholls did not give notice of its intent to terminate thirty days prior to the end of the first term. Nicholls filed a complaint in the district court, seeking a declaratory judgment that Lamar's lease was not valid and requesting an order quieting title to the disputed property to Nicholls.

[¶ 7] After answering the complaint and generally denying Nicholls' allegations, Lamar filed a motion for summary judgment seeking a ruling that the lease was effective. Nicholls filed an opposing summary judgment motion, arguing it was a bona fide purchaser and the lease was not binding upon it because it was not notified of the lease when it purchased the property. Nicholls also claimed the lease was void as an unreasonable restraint on alienation.[1] The district court ruled that Nicholls had inquiry notice of the lease, but granted summary judgment to Nicholls on the basis that the lease was void as an unreasonable restraint on alienation. Lamar appealed to this Court.

## STANDARD OF REVIEW

[¶ 8] A district court's summary judgment ruling is reviewed *de novo,* using the same materials and following the same standards as the district court. *Alloway v. RT Capital, Inc.,* 2008 WY 123, ¶¶ 5–6, 193 P.3d 713, 715 (Wyo.2008). Summary judgments are governed by W.R.C.P. 56(c):

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

[¶ 9] In reviewing a summary judgment motion, the facts are considered from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record. *Metz*

*v. Laramie County School Dist. No. 1,* 2007 WY 166, ¶ 17, 173 P.3d 334, 339 (Wyo.2007); *Cook v. Shoshone First Bank,* 2006 WY 13, ¶ 11, 126 P.3d 886, 889 (Wyo.2006).

## DISCUSSION

[¶ 10] The district court determined that our decision in *Hartnett v. Jones,* 629 P.2d 1357 (Wyo.1981) governed in this case. In *Hartnett,* three parties owned a tract of land and they agreed that each party would have the right to purchase the interests of the others if they decided to sell. This right was described as a "preemptive right," but it also could be termed a right of first refusal. Hartnett sued Jones and Whitlock because his preemptive right was not honored when Whitlock sold his interest to Jones. *Id.* at 1359–60. Jones and Whitlock defended on a number of bases, including arguing that the preemptive right was an unreasonable restraint on alienation. We applied a reasonableness standard to determine whether the preemptive right was an invalid restraint on alienation. The factors we considered were: "(1) the purpose for which the restraint is imposed; (2) the duration of the restraint; and (3) the method of determining the price." We held the restraint was reasonable and did not violate the rule against unreasonable restraints on alienation. *Id.* at 1363.

[¶ 11] The district court applied the "reasonableness" test from *Hartnett* and determined the lease at issue in this case was an unreasonable restraint on alienation. It ruled:

> In the current case, the circumstances surrounding the lease reveal an unreasonable restraint on alienation. Because the lease automatically renewed in 2005, due to [Nicholls'] failure to terminate the lease at the end of the term, [Nicholls'] only means of circumventing the lease would be to improve the property by "erecting thereon a permanent industrial[,] commercial or residential building as evidenced by a building permit." According to the Parties' arguments heard by this Court on April 23, 2008 on motions for summary judgment, a Rock Springs City ordinance

---

1. Nicholls apparently abandoned its claim that the lease did not renew automatically.

prevents [Nicholls] from ever obtaining a building permit while [Lamar's] billboard is erected on the property. Though the "purpose for which the restraint is imposed" may be to protect [Lamar's] leasehold interest, the consequence of the restraint inhibits the marketability of the property. The "duration of the restraint" may be only fifteen years under the terms of the lease, but the inability to improve the property due to the presence of [Lamar's] sign is indefinite. Finally, the "method of determining price" is fixed by the lease at $400.00 per year. The fixed price leaves little incentive for [Lamar] to accommodate improvements to the property.

In the current case, the benefits of the purpose behind the restraint are few, but the extent that alienability would be hindered is great. This Court finds that the handicap upon the marketability of the property represents an unreasonable restraint on alienation. Consequently, the lease is void.

(citations omitted).

[¶ 12] Lamar claims that, although the reasonableness test was appropriate in *Hartnett* because the preemptive right was a direct restraint on alienation, that test should not have been applied to the lease at issue here because it is only an indirect restraint on alienation. According to Lamar, the Restatement of Property directs that servitudes that impose indirect restraints on alienation should not be tested for reasonableness but, instead, should be found invalid only if they lack a rational justification. Lamar maintains that the record clearly establishes a rational justification for the lease.

[¶ 13] Restatement (First) of Property § 404 (1944) defines a direct restraint on alienation as:

(1) A restraint on alienation, as that phrase as used in this Restatement, is an attempt by an otherwise effective conveyance or contract to cause a later conveyance

(a) to be void; or

(b) to impose contractual liability on the one who makes the later conveyance when

such liability results from a breach of an agreement not to convey; or

(c) to terminate or subject to termination all or part of the property interest conveyed.

*See also, Smith v. Osguthorpe,* 58 P.3d 854, 860 (Utah Ct.App.2002). Phrased another way, a "direct restraint on alienation is a provision in a deed, will, contract, or other instrument which, by its express terms, or by implication of fact, purports to prohibit or penalize the exercise of the power of alienation." *Spanish Oaks, Inc. v. Hy–Vee, Inc.,* 265 Neb. 133, 655 N.W.2d 390, 399 (2003). Direct restraints on alienation include such things as "prohibitions on transfer without the consent of another, prohibitions on transfer to particular persons, requirements of transfer to particular persons, options to purchase land, and rights of first refusal." Restatement (Third) of Property: Servitudes § 3.4 cmt. b (2000).

[¶ 14] Restatement (Third) of Property: Servitudes § 3.4 states that the test for determining whether a direct restraint on alienation imposed by a servitude is enforceable is the "reasonableness" test:

A servitude that imposes a direct restraint on alienation of the burdened estate is invalid if the restraint is unreasonable. Reasonableness is determined by weighing the utility of the restraint against the injurious consequences of enforcing the restraint.

[¶ 15] Unlike a direct restraint, an indirect restraint does not place express limitations on the owner's right to convey the property. An indirect restraint on alienation " 'arises when an attempt is made to accomplish some purpose other than the restraint of alienability, but with the incidental result that the instrument, if valid, would restrain practical alienability.' " *Smith,* 58 P.3d at 860, quoting *Redd v. Western Savings & Loan Co.,* 646 P.2d 761, 764 (Utah 1982). *See also, Spanish Oaks,* 655 N.W.2d at 399. Restatement (Third) of Property: Servitudes § 3.5 (2000) pertains to indirect restraints on alienation created by servitudes:

(1) An otherwise valid servitude is valid even if it indirectly restrains alienation by limiting the use that can be made of prop-

erty, by reducing the amount realizable by the owner on sale or other transfer of the property, or by otherwise reducing the value of the property.

(2) A servitude that lacks a rational justification is invalid.

[¶ 16] "Section 3.5 drops the requirement that an indirect restraint be reasonable, requiring only a rational justification for the restraint." *Smith*, 58 P.3d at 861, citing Restatement (Third) of Property: Servitudes § 3.5 cmt. a. Comment a of Restatement § 3.5 explains the logic underlying the "rational justification" requirement:

Many servitudes indirectly affect the alienability of property by limiting the numbers of potential buyers or by reducing the amount the owner might otherwise realize on a sale of the property. If the servitude ... is not otherwise invalid ..., the fact that the servitude results in some diminution in return to the owner, or some reduction in the potential market for the property, is not sufficient justification for refusing to give effect to the intent of the parties to create the servitude.... The parties are usually in a better position than judges to decide the economic trade-offs that will enable a transaction to go forward and enhance their overall value....

Unlike direct restraints on alienation, which directly interfere with the process of conveying land, and have long been understood and constrained by the common law, indirect restraints may have no overall negative effects on the wealth of a society overall or more narrowly, on the value of its land resources. On the contrary, they may result in an overall increase in wealth. Therefore, this section adopts the position that a servitude is not invalid simply because it reduces the value of a particular piece of land or reduces the amount the owner will realize on sale of the land. Unlike direct restraints, where courts can and should weigh the harm that will be caused by limiting alienation of a particular piece of property against the good that will be accomplished by the restriction, courts should not attempt to weigh the harm caused by an indirect restraint against the overall value of the transaction in which the servitude played a part. There are too many potential variables, and private decision making is more likely than judicial decision making to increase overall wealth and well-being.

The purpose of this section is to reject the rule that a servitude must be reasonable. If the servitude is not otherwise invalid because it is illegal, unconstitutional, or against public policy, it need not be reasonable. The only requirement is that there be a rational justification for creating it as a servitude. The fact that the servitude limits the market for property by limiting its use or reducing its value ... is irrelevant in determining its validity, so long as there is some rational justification for creation of the servitude. The fact that there may be a rational justification for the obligation is not sufficient; there must be a rational justification for imposing the obligation as a servitude that runs with the land. If there is no rational justification for the servitude, it should not be enforced because there is no real trade-off for the resulting decrease in the value of the land, and the legal system should not be used to enforce irrational arrangements against unwilling participants.

[¶ 17] Nicholls argues that we adopted the reasonableness standard for both direct and indirect restraints in *Hartnett*. We disagree. The preemptive right at issue in *Hartnett* was clearly a direct restraint on alienation. Section 3.4 cmt. b. We did not consider in that case whether the reasonableness test applied to indirect restraints. Although some jurisdictions apply a reasonableness test to both direct and indirect restraints, *see, e.g., Redd*, 646 P.2d at 764; *Peavey v. Reynolds*, 946 So.2d 1125 (Fla.Ct.App.2006), we are not convinced that is the correct approach. As explained in comments a and b to § 3.5, the economic principles that make direct restraints on alienation suspect do not apply in the context of indirect restraints imposed by servitudes, especially in the commercial context. Instead, parties should be free to decide upon their own contractual terms and it is not the role of the courts to second guess their decision

making, so long as there is a rational justification for the servitude.

[¶ 18] Lamar's lease specifically recognized the possibility that title to the property could be transferred during the lease term by requiring that notice of the change of ownership be given to the lessee and the new owner be informed of the lease. Moreover, as our recitation of the facts makes clear, ownership of the property transferred several times during the lease term. The lease clearly did not amount to a direct restraint on alienation, and Nicholls concedes as much.

[¶ 19] Lamar's lease was simply a servitude that had the potential effect of restraining alienation by limiting the value or use of the property. As such, it amounted to an indirect restraint on alienation. The rational justification test set out in § 3.5 for indirect restraints, rather than the reasonableness test, should have been applied to determine whether the lease was invalid. In reviewing a summary judgment, we apply the same analysis as the district court, and, in the interest of judicial economy, we will apply the "rational justification" test to determine whether Lamar's lease is an improper restraint on alienation. *See generally, Wells Fargo Bank Wyoming, N.A. v. Hodder,* 2006 WY 128, ¶ 32, 144 P.3d 401, 412 (Wyo.2006) (applying the correct legal analysis to the facts in the record following a bench trial).

[¶ 20] The lease at issue here was commercial in nature. Comment b to § 3.5 states that "[s]ervitudes created in commercial transactions seldom lack rational justification." Lamar's general manager, Dave Butterfield, had worked for Frontier before it was acquired by Lamar and had personal knowledge of the companies' leasing practices and the lease with Mr. Rahonce. Mr. Butterfield explained the rationale for such an approach in leasing billboard sites, including the fifteen year term and the automatic renewal, in his summary judgment affidavit. He averred:

4. Lamar typically enters into leases with landowners that call for a fifteen or twenty year time period. Because it usually takes years to re-coup the costs of the initial infrastructure, rental payments, and sign up-keep, Lamar has found only leases of these time periods allow Lamar to remain profitable given the relatively small margins of profit.

5. The leases Lamar executes typically require the Lessor to provide at least a thirty (30) day and no more than a ninety (90) day notice period prior to automatic roll-over as it takes a significant amount of time to find new locations, execute new leases with the land owners and rent the space.

As recognized by Mr. Butterfield, the lease could be cancelled without penalty if the lessor gave notice thirty days prior to the end of the lease term that it did not wish to renew the lease. Nicholls presented no evidence refuting Mr. Butterfield's statements, and those statements provide valid business reasons for the lease terms. As a matter of law, Mr. Butterfield's explanation establishes a rational justification for the servitude.

[¶ 21] In addition, even if the reasonableness test applied, we note that the lease included a provision that allowed Nicholls to terminate the leasehold if it obtained a permit to construct a building on the site. The district court's conclusion that the lease unreasonably diminished the value of the property because Nicholls was not free to improve it by building a structure was apparently based solely upon Nicholls' representation that a Rock Springs city ordinance prohibited it from obtaining a building permit while the sign was located on the property. However, the record does not contain the ordinance or any testimony that an application for a building permit was denied.

[¶ 22] Applying the correct legal standard, we conclude the servitude did not pose an improper restraint on alienation and the lease was valid.

[¶ 23] Reversed.