The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
March 5, 2026

## 2026COA10

**No. 25CA0323, *In the Matter of Fred L. Maxwell, deceased* — Real Property — Restraints on Alienation; Wills and Trusts — Charitable Gifts — Reformation — Release or Modification of Restriction on Management, Investment, or Purpose — Cy Pres**

A division of the court of appeals holds that, although the donee of a charitable gift of real property is not entitled to declarations that restrictions on alienation and use of that property are void, it is entitled to reformation of the will under which the gift was made to allow the property to be sold, with the proceeds to go toward activities consistent with the donor's purpose in making the gift, or encumbered in a way consistent with that purpose. In so holding, the division applies various principles of real property and trusts and estates law, some for the first time in a published opinion by a Colorado appellate court.

Court of Appeals No. 25CA0323
Larimer County District Court No. 24PR30498
Honorable Sarah B. Cure, Judge

In the Matter of Fred L. Maxwell, deceased.

Colorado State University Research Foundation, d/b/a CSU STRATA,

Appellant.

ORDER AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE J. JONES
Lum and Meirink, JJ., concur

Announced March 5, 2026

Otten, Johnson, Robinson, Neff & Ragonetti, P.C., Thomas J. Ragonetti, Andrew L.W. Peters, Noah R. Grolnick, Denver, Colorado, for Appellant

Philip J. Weiser, Attorney General, Michael D. McMaster, Assistant Solicitor General, Denver, Colorado, for Amicus Curiae Board of Governors of the Colorado State University System

¶ 1    In 1945, Fred L. Maxwell executed his last will and testament (Will). He died in 1956. In his Will, Maxwell devised 9,733 acres of land in Larimer County, Colorado, and Albany County, Wyoming — known as Maxwell Ranch — to a nonprofit foundation affiliated with Colorado State College of Agriculture and Mechanic Arts, now known as Colorado State University (CSU). The Will prohibits the foundation from selling Maxwell Ranch (the sale restriction) and restricts its use to "experimental purposes in connection with [CSU]" (the use restriction). The foundation — now known as CSU STRATA — took title to Maxwell Ranch in 1975.

¶ 2    In 2024, CSU STRATA petitioned the Larimer County District Court to declare the sale and use restrictions void or, alternatively, to reform the Will to allow a sale of the property with the proceeds to go toward CSU's agricultural research efforts. Further in the alternative, CSU STRATA sought declarations that, consistent with the use restriction, Maxwell Ranch may be encumbered by a conservation easement and can be leased for wind energy production purposes. The district court denied CSU STRATA's petition in all respects.

¶ 3 We conclude, based on the undisputed facts, that while the sale and use restrictions of Maxwell Ranch aren't void, the Will should be reformed to allow CSU STRATA to encumber the property, in a way consistent with Maxwell's intent that the ranch be used for experimental research purposes, or to sell the property, with the net proceeds of any such sale to be used by CSU STRATA to fund experimental research by CSU at such locations as CSU STRATA and CSU deem consistent with CSU's educational and research missions. We also conclude that, like the district court, we don't have enough information to determine whether a conservation easement would be consistent with the use restriction and therefore affirm the district court's order insofar as the court denied declaratory relief relating to that use of Maxwell Ranch. Lastly, we conclude that CSU STRATA is entitled to a declaration that it may lease Maxwell Ranch for wind energy production if it does so for experimental research purposes.

## I.  Background

¶ 4 As relevant to this case, Maxwell's Will provided that, upon his death,

my said executor and trustee shall transfer, assign, convey, and deliver unto the Colorado Agricultural Research Foundation[,] a non-profit Colorado corporation, and its successors and assigns, all of the remaining assets of my estate, and the transfer of said assets to said Colorado Agricultural Research Foundation shall be upon the condition that said assets shall be used exclusively for experimental purposes in connection with the Colorado State College of Agricultural and Mechanic Arts, and that the real estate shall never be alienated, sold, or disposed of by said beneficiary or its successors or assigns.

¶ 5   The next paragraph of the Will provided as follows:

And in connection with the experimental work which I require to be done by the Colorado Agricultural Research Foundation, its successors and assigns, it is my will that my said lands shall be used for a study of the nutritive value of mountain meadows and grasses and include experimentation with means of renovating and improving meadows and pastures, and a study of animal nutrition and diseases under range conditions, and also to be set up a practical course in range and ranch management, including experimental work in breeding livestock.  It is understood, however, that the particular purposes in this paragraph set forth are not in the way of limitation, but merely as a suggestion, and that said ranch properties which shall become vested in Colorado Agricultural Research Foundation, its successors and assigns, may be used for such other experimental purposes as said Foundation may deem advisable.

3

¶ 6    Maxwell's wife and sisters outlived him, but they had all died by 1972. In that year, the Larimer County District Court directed the trustee of Maxwell's estate to distribute what remained of the estate. Consistent with the Will's terms, in 1975, CSU STRATA received the deeds to Maxwell Ranch.[1]

¶ 7    In 2007, CSU STRATA filed a declaratory judgment action in Larimer County District Court seeking a declaration that allowing Maxwell Ranch to be leased for the purpose of allowing a company to "construct[] facilities and windmills or turbines on the Ranch to convert wind energy into electrical energy" would be consistent with the Will's use restriction. CSU STRATA alleged that the purposes of the anticipated lease included determining the feasibility of wind energy conversion, undertaking meteorological studies, and using the facilities for educational and research purposes. The district court granted the requested declaratory relief. But that lease was never entered into.

---

[1] One deed was for the portion of the property in Larimer County, Colorado. The other was for the portion of the property in Albany County, Wyoming.

¶ 8    In 2024, CSU STRATA filed a petition in Larimer County District Court to remove the Will's restrictions on the sale and use of Maxwell Ranch.[2]  The petition's five claims for relief sought

1. a declaration that the Will's sale restriction is void as an unreasonable restraint on alienation;

2. a declaration that the Will's use restriction is void as an unreasonable restraint on alienation;

3. in the alternative to claims 1 and 2, reformation of the Will under either the doctrine of equitable deviation or the doctrine of cy pres (as codified in part at section 15-1-1106(c), C.R.S. 2025) to allow the sale of Maxwell Ranch free of the sale and use restrictions, with the proceeds of any sale to be used to fund agricultural research at other locations that CSU STRATA and CSU

---

[2] CSU STRATA notified the Attorney General of its petition because, under section 15-1-1106(c), C.R.S. 2025, when an institutional fund believes a restriction on use in a charitable gift instrument has become "unlawful, impracticable, impossible to achieve, or wasteful," and it asks a court to modify the restriction in a way consistent with the gift's purpose, the fund must notify the Attorney General, and the Attorney General must then have an opportunity to be heard.  The Attorney General didn't object to CSU STRATA's petition.

deem consistent with CSU's educational and research missions (CSU STRATA subsequently indicated that it also sought the right to encumber the ranch consistently with that purpose and those missions);

4. a declaration that, notwithstanding the sale and use restrictions, CSU STRATA may encumber Maxwell Ranch with a conservation easement, and that such use of the property isn't inconsistent with the Will's restrictions; and

5. a declaration that a wind energy production lease is consistent with the purposes for which Maxwell devised Maxwell Ranch to CSU STRATA and that CSU STRATA may grant a wind energy production lease on the property.

¶ 9     Dr. Ajay Menon, the President and Chief Executive Officer of CSU STRATA, submitted an affidavit to the court in support of the petition. He said that for several decades CSU STRATA had attempted to use Maxwell Ranch consistently with the Will's use restriction. Since receiving the deeds in 1975, CSU STRATA had used the Maxwell Ranch to (1) establish a commercial cow and calf

operation; (2) give opportunities for students and interns to learn about the day-to-day operations of a cattle ranch; (3) give access to graduate students to study seismic activities and fault lines; (4) supply cows to CSU for teaching purposes and animal breeding classes; (5) allow the use of cull cows for embryo transfer work; (6) undertake various studies relating to locoweed (a poisonous plant); (7) conduct various studies with Colorado Parks and Wildlife; (8) undertake artificial versus natural colostrum studies with newborn calves; and (9) enter into grazing leases, mineral leases, and leases "to research and develop electrical power through the use of wind energy." But he noted that CSU

> currently has few activities at the Ranch and no future engagement activities are planned because continuing to perform research at the Ranch had proven impractical. Despite its best efforts over multiple decades to make the Ranch a functional outpost, the Ranch has ultimately proven to be an ineffective and impracticable vehicle for CSU STRATA's research pursuits.

¶ 10    Dr. Menon said that performing research in line with the Will's use restriction remained "ineffective and impracticable . . . due to inherent characteristics of [Maxwell Ranch's] landscape and ecosystems," which he then described, and lack of necessary

7

infrastructure, which CSU couldn't afford to build. He also said that other locations are more suitable for CSU's research efforts, particularly given the current federal and state funding and grant priorities, which favor types of research for which Maxwell Ranch isn't well suited.

¶ 11    No one opposed the petition. At a hearing on the petition, the district court considered the history of the Will, Maxwell Ranch's historical uses, and Dr. Menon's affidavit. The court denied CSU STRATA's requests to void the sale restriction and reform the Will, finding that it was "bound . . . by the intent of the testator" and "[i]t is somewhat slightly unbelievable, somewhat disheartening, that . . . with the information that I've been provided that the petition claims that selling the ranch and using the proceeds would actually elevate the impact of his original gift." The court also referred to court records from the 2007 case in which a previous foundation president and the foundation's legal counsel had indicated "the importance of the alienation restriction in the will." As for CSU STRATA's argument that it was impractical or impossible to use the property as Maxwell intended, the court said, "I simply disagree."

¶ 12     The district court also rejected CSU STRATA's request to declare the use restriction void, finding that "it's not an unreasonable restraint.  It's not void."  The court prefaced that finding with the observation that the petition described "the wide array of experimental educational uses of this ranch — which is incredible."  Despite Dr. Menon's uncontroverted representation, the court said, "I'm not entirely sure where the petition indicates that the ranch has very few activities and no future engagement activities."  Then the court said that if Maxwell Ranch isn't suited for high impact activities because of its landscape, CSU knew that when it received the property.

¶ 13     The district court also rejected CSU STRATA's fourth and fifth claims for relief — which requested declarations that use of the property for a conservation easement and wind energy development was permissible under the Will — but indicated some openness to revisiting those two claims if given "more specific information."

¶ 14     CSU STRATA's attorney asked the court to hear more from Dr. Menon, but the court refused, characterizing the petition as nothing more than "complaints" about "management issues" that weren't

9

Maxwell's fault. The court concluded that CSU "had shown [itself] to be creative . . . [a]nd I believe [it] can do it again."

¶ 15 The district court later incorporated its findings at the hearing into a written order denying CSU STRATA's petition. That order didn't include any additional findings.

## II. Discussion

¶ 16 CSU STRATA contends that the district court erred by denying each of the five claims in its petition. We disagree with CSU STRATA that the district court erred by denying the first two claims for relief. Because the gift of Maxwell Ranch was a charitable gift, the Will's sale and use restrictions aren't void. But we agree with CSU STRATA that the court erred by denying its third claim because, based on the undisputed facts, the Will should be reformed to allow the property to be (1) sold free of those restrictions, provided the proceeds are used by CSU STRATA for experimental purposes, consistent with Maxwell's intent; and (2) encumbered in a way consistent with such purposes. As for claims four and five, we conclude that the record isn't sufficient to determine whether a conservation easement would be consistent with the use restriction. Therefore, we affirm the district court's

10

order on the fourth claim.  But we reverse the order on the fifth

claim: CSU STRATA is entitled to a declaratory judgment that it

may enter into a wind energy production lease encumbering the

ranch if doing so furthers Maxwell's intent that the ranch be used

for experimental research.

## A.    Applicable Law

¶ 17    "A restraint on alienation is, in common vernacular, a

limitation on the right to transfer or convey property or a property

right."  *Teal Trading & Dev., LP v. Champee Springs Ranches Prop.*

*Owners Ass'n*, 534 S.W.3d 558, 574 n.5 (Tex. App. 2017) (citing

*Alienate*, Black's Law Dictionary 80 (8th ed. 2004)), *aff'd*, 593

S.W.3d 324 (Tex. 2020).  Restraints on alienation are typically

categorized as either direct or indirect restraints.  Restatement

(Third) of Prop.: Servitudes §§ 3.4, 3.5 (A.L.I. 2000); *accord Lamar*

*Advert. v. Larry & Vickie Nicholls, L.L.C.*, 2009 WY 96, ¶¶ 12-16, 213

P.3d 641, 644-45.  "A direct restraint on alienation is a provision in

a deed, will, contract, or other instrument which, by its express

terms, or by implication of fact, purports to prohibit or penalize the

exercise of the power of alienation."  *Spanish Oaks, Inc. v. Hy-Vee,*

*Inc.*, 655 N.W.2d 390, 399 (Neb. 2003); *see also* Restatement (Third)

11

of Prop.: Servitudes § 3.4 cmt. b ("Direct restraints include absolute

prohibitions on some or all types of transfers . . . .").

> Unlike a direct restraint, an indirect restraint
> does not place express limitations on the
> owner's right to convey the property.  An
> indirect restraint on alienation "arises when an
> attempt is made to accomplish some purpose
> other than the restraint of alienability, but
> with the incidental result that the instrument,
> if valid, would restrain practical alienability."

*Lamar Advert.*, ¶ 15, 213 P.3d at 644 (quoting *Smith v. Osguthorpe*,

2002 UT App 361, ¶ 27, 58 P.3d 854, 860).

> An otherwise valid servitude is valid even if it
> indirectly restrains alienation by limiting the
> use that can be made of property, by reducing
> the amount realizable by the owner on sale or
> other transfer of the property, or by otherwise
> reducing the value of the property. . . .  A
> servitude that lacks a rational justification is
> invalid.

*Id.* at ¶ 15, 213 P.3d at 644-45 (quoting Restatement (Third) of

Prop.: Servitudes § 3.5(1), (2)).

¶ 18    Generally speaking, "[t]he law does not permit restraints to be

imposed upon the alienation of an estate in fee simple."  *Cronk v.

Shoup*, 197 P. 756, 757 (Colo. 1921); *see Potter v. Couch*, 141 U.S.

296, 318 (1891); *see also* 3 *Thompson on Real Property* § 29.02,

at 759 (David A. Thomas ed., 3d ed. 2012) (direct restraints on

alienation are generally considered invalid). "[H]owever, a restraint is invalid only if it is unreasonable in view of the justifiable interests of the parties." *Carpenter v. Winn*, 566 P.2d 370, 371 (Colo. App. 1977) (citing *Malouff v. Midland Fed. Sav. & Loan Ass'n*, 509 P.2d 1240 (Colo. 1973)); *accord Atl. Richfield Co. v. Whiting Oil & Gas Corp.*, 2014 CO 16, ¶ 24 ("The rule against unreasonable restraints 'is applied by considering the reasonableness of the restraint.'" (quoting *Metro. Transp. Auth. v. Bruken Realty Corp.*, 492 N.E.2d 379, 281 (N.Y. 1986))); *see also* Restatement (Third) of Prop.: Servitudes § 3.4 ("A servitude that imposes a direct restraint on alienation of the burdened estate is invalid if the restraint is unreasonable.").

¶ 19    "The rules against unreasonable restraints on alienation generally aim to keep assets available for commerce by applying different types of limits depending on the nature of the property, the purpose of the restraint, and its potential for harm." *Atl. Richfield Co.*, ¶ 24 (citing Restatement (Third) of Prop.: Servitudes § 3.4 cmt. a); *id.* at ¶ 23 (The rules attempt to "avoid fettering real property with future interests dependent upon contingencies unduly remote which isolate the property and exclude it from commerce and

13

development for long periods of time, thus working an indirect restraint upon alienation." (quoting *First Nat'l Bank & Tr. Co. of Okla. City v. Sidwell Corp.*, 678 P.2d 118, 127 (Kan. 1984))); *Atchison v. City of Englewood*, 463 P.2d 297, 301 (Colo. 1969) (the purpose of the rule against unreasonable restraints on alienation is "to keep property freely alienable" or to prevent "the withdrawal of property from commerce").

¶ 20     But somewhat different rules apply to charitable gifts, such as the gift at issue in this case.[3]  While the general rule described above discourages or prohibits direct and indirect restraints on alienation deemed unreasonable, "[a] donor of property for a charitable use may impose such conditions as he may choose, including a restraint on alienation.  This right is an exception to the prohibition against restraint on alienation."  *Sisters of Mercy of Cedar Rapids v. Lightner*, 274 N.W. 86, 92 (Iowa 1937); *see* 5 Herbert Tiffany, *Real Property* § 1347, Westlaw (3d ed. database updated Sept. 2025) ("[A]n exception to the general rule [prohibiting

---

[3] A gift for educational purposes is considered a charitable gift.  *See Smith v. U.S. Nat'l Bank of Denv.*, 207 P.2d 1194, 1200-01 (Colo. 1949).

restraints on alienation] exists in the situation in which real property is transferred to a charitable group for charitable purposes."). Indeed, it appears that most jurisdictions recognize an exception to the general rule when, as in this case, real property is transferred to a charitable group for charitable purposes. *Atlanta Dev. Auth. v. Clark Atlanta Univ., Inc.*, 784 S.E.2d 353, 356 (Ga. 2016); *Girl Scouts of S. Ill. v. Vincennes Ind. Girls, Inc.*, 988 N.E.2d 250, 256-57 (Ind. 2013) (Restrictions on alienation are allowed "in charitable conveyances in order to encourage philanthropy."); *Wachovia Bank & Tr. Co. v. John Thomasson Constr. Co.*, 168 S.E.2d 358, 364 (N.C. 1969) ("The general rule is that a condition against alienation in a gift for a charitable trust is not invalid or void."); *Ohio Soc'y for Crippled Child. & Adults, Inc. v. McElroy*, 191 N.E.2d 543, 546 (Ohio 1963) ("[W]here land is devised upon condition that the devisee shall not sell it, such a restraint is void as repugnant to the devise and contrary to public policy. However, such a restraint on alienation of property conveyed to a trustee to be held for charitable or other public uses will usually be given effect." (citations omitted)); *see also* Restatement (Third) of Prop.: Servitudes § 3.4 cmt. i ("The social utility of devoting property to

15

conservation, historic preservation, and charitable purposes is strong enough to justify severe restraints on alienation that are reasonably necessary or convenient to assure that the property will be used to carry out the intended purposes."); *id.* at cmt. c (same); *id.* § 3.5 cmt. d ("Limitations on use of property to serve various governmental and charitable purposes are also generally valid so long as the limitations are rationally related to serving a legitimate purpose.").[4]

¶ 21     But be that as it may, many jurisdictions, including Colorado, allow a court to relieve the grantee of a charitable gift from a restriction on the gift's alienation or use in certain circumstances. Indeed, three Colorado statutes deal with bequests containing such restrictions, two of which we apply in this case.[5] As noted above, section 15-1-1106(c) provides that,

---

[4] Colorado has long treated charitable gifts as not subject to the rule against perpetuities, a close relative of the rule prohibiting unreasonable restraints on alienation. *See, e.g.*, *In re Schleier's Estate*, 13 P.2d 273, 274 (Colo. 1932) (collecting cases).
[5] Section 15-5-412, C.R.S. 2025, essentially codifies the doctrine of equitable deviation, which allows a court to change the way that a trust is administered because of unanticipated changed circumstances. We don't need to consider the application of that doctrine to the sale and use restrictions because of our conclusion that the cy pres doctrine justifies reformation of the Will.

> [i]f a particular charitable purpose or a restriction contained in a gift instrument on the use of an institutional fund becomes unlawful, impracticable, impossible to achieve, or wasteful, the court, upon application of an institution, may modify the purpose of the institutional fund or the restriction on the use of the institutional fund in a manner consistent with the charitable purposes expressed in the gift instrument.

And section 15-5-413(1)(c), C.R.S. 2025, similarly provides that, "if a particular charitable purpose becomes unlawful, impracticable, impossible to achieve, or wasteful[,] . . . [t]he court may apply cy pres to modify or terminate the trust by directing that the trust property be applied or distributed, in whole or in part, in a manner consistent with the settlor's charitable purposes."

¶ 22    These two statutes codify, in part, the common law cy pres doctrine (explicitly referred to in section 15-5-413) long applied in Colorado. *See, e.g.*, *Dunbar v. Bd. of Trs. of George W. Clayton Coll.*, 461 P.2d 28, 29-30 (Colo. 1969); *In re Estate of Vallery*, 883 P.2d 24, 28 (Colo. App. 1993).[6]  And importantly for our purposes, that doctrine isn't applicable only to funds or express trusts; it may be

---

[6] "Cy pres" means "as near as."  *Cy pres*, Black's Law Dictionary 487 (12th ed. 2024).

applied to charitable gifts generally. *In re Estate of Vallery*, 883 P.2d at 28; *see also* Restatement (Third) of Trs. § 67 (A.L.I. 2003) (articulating the cy pres doctrine).

> A purpose becomes "impracticable" under the cy pres doctrine when it appears that under the circumstances the application of the property to that designated purpose would fail to accomplish the general charitable intention of the testator. Such difficulty need be only a reasonable one and not such as to make the donor's plan a physical impossibility.

*In re Estate of Vallery*, 883 P.2d at 28 (citation omitted); *accord Dunbar*, 461 P.2d at 30; *see* Restatement (Third) of Trs. § 67 cmt. c.

¶ 23    If a court determines that it has become impractical or wasteful to use the property for the donor's intended purpose or impossible to achieve that purpose, the usual remedy seems to be to modify the gift instrument to allow for a sale of the property, with the proceeds to be used in accordance with the donor's general intended charitable purpose: Declaring the restriction void ordinarily isn't a remedy. *See* §§ 15-1-1106(c), 15-5-413(1)(c); *Dunbar*, 461 P.2d at 30; *In re Estate of Vallery*, 883 P.2d at 28; *Rolfe & Rumford Asylum v. Lefebre*, 45 A. 1087, 1088 (N.H. 1898); *Wachovia Bank & Tr. Co.*, 168 S.E.2d at 363-65; *Ohio Soc'y for*

*Crippled Child. & Adults*, 191 N.E.2d at 546-47; *see also Henshaw v. Flenniken*, 191 S.W.2d 541, 544 (Tenn. 1945) (applying the equitable deviation doctrine); Restatement (Third) of Trs. § 67 cmt. d (the property must be applied in a way falling within the grantor's general charitable purpose; it need not be applied to the nearest possible purpose).

¶ 24    With these principles in mind, we turn to CSU STRATA's claims for relief.

## B.    Analysis

### 1.    The Sale and Use Restrictions Aren't Void

¶ 25    Whether a property interest violates the rule against unreasonable restraints is a mixed question of law and fact. *Atl. Richfield Co.*, ¶ 22. "'Where there is a mixed question of law and fact, the reviewing court will give deference to the trial court's factual findings, absent an abuse of discretion,' but will independently review questions of law.'" *In re Estate of Owens*, 2017 COA 53, ¶ 19 (quoting *Sheridan Redevelopment Agency v. Knightsbridge Land Co.*, 166 P.3d 259, 262 (Colo. App. 2007)). "When, as in this case, the controlling facts are undisputed, however, the legal effect of those facts constitutes a question of

law." *DeJean v. Grosz*, 2015 COA 74, ¶ 15 (citing *Lakeview Assocs., Ltd. v. Maes*, 907 P.2d 580, 583-84 (Colo. 1995)); *accord Atl. Richfield Co.*, ¶ 22.

¶ 26    The absolute prohibition of the sale of Maxwell Ranch is clearly a direct restraint on alienation. And we conclude, based on the record, that the use restriction is an indirect restraint on alienation because it is of a nature that in all likelihood limits the class of prospective buyers to such an extent that the sale of the property subject to the use restriction would be virtually impossible. Who would buy such a property if it could only be used for the specified research purposes as directed and administered by CSU? Probably no one, especially given CSU STRATA's undisputed evidence that it hasn't been able to make such use of the property in an economically viable or educationally productive way for the past fifty years. *Cf. Godoy v. Linzner*, 327 Cal. Rptr. 3d 323, 333 (Ct. App. 2024) (concluding that a restraint on alienation was unreasonable because it limited a sale of the property to two possible purchasers); *Taormina Theosophical Cmty., Inc. v. Silver*, 190 Cal. Rptr. 38, 43-44, 44 n.7 (Ct. App. 1983) (a restrictive covenant limiting the sale of property to theosophists older than 50,

which significantly limited the number of potential purchasers to about 6,000 persons, was an unreasonable restraint on alienation).

¶ 27 But that doesn't mean the restrictions are void. This is because they are appurtenant to a charitable gift and, as previously discussed, restraints on alienation in charitable gifts are ordinarily enforceable. Therefore, we conclude that the district court didn't err by denying CSU STRATA's first two claims for relief. *See Est. of Schiola v. Colo. Dep't of Health Care Pol'y & Fin.*, 51 P.3d 1080, 1083 (Colo. App. 2002) (we may affirm the lower court on a ground different than that relied on by the lower court).[7]

### 2. The Will Should Be Reformed

¶ 28 This leads us to CSU STRATA's third claim — for reformation of the Will — which meets a different fate.

¶ 29 This claim turns on application of the cy pres doctrine. "The exercise of the cy pres doctrine involves a large measure of discretion." *In re Estate of Vallery*, 883 P.2d at 29; *see Fisher v.*

---

[7] CSU STRATA's arguments for voiding the sale and use restrictions fail to account for the charitable nature of the gift. We don't hold that restraints on alienation appurtenant to charitable gifts can never be voided; we hold only that CSU STRATA hasn't persuasively argued why the restrictions in this case should be voided under principles applicable to charitable gifts.

21

*Minshall*, 78 P.2d 363, 364 (Colo. 1938). But in this case, the district court based its decision only on the papers submitted, counsel's argument, and part of the record of the 2007 proceedings. The court wasn't called on to make any credibility determinations or evaluate conflicting evidence. We are therefore in as good a position as the district court to determine whether the evidence presented — all of which was undisputed — supports modification of the Will under the cy pres doctrine. So our review is de novo. *See Battle N., LLC v. Sensible Hous. Co.*, 2015 COA 83, ¶ 61.

¶ 30     As noted, CSU STRATA asked the district court to reform the Will to allow CSU STRATA to sell Maxwell Ranch free of the sale and use restrictions, with the net proceeds of any such sale or lease to be used by CSU STRATA to fund experimental research "consistent with the educational and research missions of the University," or to allow it to encumber the ranch subject to the same limitation. It asserted that this would "effectuate Maxwell's intent." On appeal, CSU STRATA contends that "[a]llowing the proceeds from a sale or encumbrance to flow toward [agricultural] research would further Maxwell's testamentary aims." We agree with CSU STRATA that it has demonstrated that continued attempts to use Maxwell Ranch in

the manner limited by the Will would be impractical, impossible to achieve, and wasteful. CSU STRATA is therefore entitled to reformation of the Will.

¶ 31 Dr. Menon's affidavit, which, again, isn't controverted, establishes the following:

- CSU has tried for several decades to put Maxwell Ranch to various uses consistent with Maxwell's intent.

- These efforts have proved unsuccessful for several legitimate reasons.

- Under current circumstances, and those reasonably foreseeable, continuing to attempt to use Maxwell Ranch for the purposes of experimental agricultural research would be largely unworkable and financially unfeasible.

- Other locations that CSU uses for such research are suitable for such research.

¶ 32 The district court's rejection of this claim was based on its hope that CSU STRATA could come up with some viable, economical use of the property. But no record evidence supports the district court's assertion that CSU STRATA can use Maxwell

23

Ranch in practical, economically feasible ways consistent with Maxwell's intent merely by trying harder or being more creative.

¶ 33    It therefore follows that the Will should be reformed (or "modified," *see* §§ 15-1-1106(c), 15-5-413(1)(c)), to provide that Maxwell Ranch (1) may be sold free of the sale and use restrictions, with any resulting proceeds used to fund CSU's experimental research operations at other locations as CSU STRATA, in consultation with CSU, sees fit;[8] or (2) may be encumbered in a way consistent with Maxwell's intent that the ranch be used for experimental research.[9]

### 3. The Claim for a Declaration that a Conservation Easement Would Be Consistent with the Use Restriction Fails

¶ 34    As noted, the district court determined that CSU STRATA hadn't provided enough information for the court to make an

---

[8] At oral argument, CSU STRATA's counsel asked that the Will also be reformed to generally allow encumbrances on Maxwell Ranch. But consistent with the cy pres doctrine and the governing statutes, any modification of a will must be consistent with the charitable purposes expressed in the gift instrument. *See* §§ 15-1-1106(c), 15-5-413(1)(c), C.R.S. 2025. Thus, counsel's request was overly broad.

[9] Though the Will expressed Maxwell's preference that the ranch be used for particular agricultural purposes indicated therein, that was "merely [his] suggestion." His more general intent was that the ranch be used for "experimental purposes."

informed decision whether imposing a conservation easement on the property would be consistent with the Will's use restriction. We agree with that assessment. It isn't readily apparent that a conservation easement would constitute a use of the ranch for "experimental purposes." Thus, CSU STRATA isn't entitled to the declaratory relief requested by its fourth claim.

4. CSU STRATA Is Entitled to a Declaration that Leasing Maxwell Ranch for Wind Energy Production Purposes Would Be Consistent with the Use Restriction (Subject to an Important Caveat)

¶ 35    The district court also denied CSU STRATA's request for declaratory relief on its fifth claim based on a lack of information. But unlike a conservation easement, it is readily apparent to us that leasing the ranch for wind energy production purposes would be consistent with the use restriction — *if* any such lease also required CSU to use such development for experimental research purposes.

¶ 36    In 2007, the Larimer County District Court granted declaratory relief to CSU STRATA on virtually the same claim. The differences between that claim and CSU STRATA's fifth claim in this case are (1) the 2007 claim sought a declaration as to a particular

25

lease that had already been negotiated, whereas no such lease was identified in this case; and (2) the lease at issue in the 2007 proceeding expressly allowed CSU to use the facilities constructed under the lease for research purposes.

¶ 37 In our view, a wind energy production lease containing the same terms as the lease at issue in 2007 would be consistent with Maxwell's intent that the ranch be used for "experimental purposes." Therefore, CSU STRATA is entitled to a declaration that it may enter into a wind energy production lease (or leases) encumbering Maxwell Ranch so long as any such lease expressly provides that CSU will use the facilities constructed pursuant to the lease for experimental research.

### III.   Disposition

¶ 38 We affirm the district court's order on CSU STRATA's first, second, and fourth claims. We reverse the district court's order on CSU STRATA's third and fifth claims and remand the case with instructions to reform the Will and grant CSU STRATA declaratory relief consistent with this opinion.

JUDGE LUM and JUDGE MEIRINK concur.